[Civ. No. 15761. Second Dist., Div. Three. Jan. 9, 1948.]

STEPHEN F. COOK et al., Appellants, v. EMILY NORDSTRAND, Respondent.

William R. Law for Appellants.

A. W. Brunton for Respondent.

WOOD, J.—Plaintiffs, husband and wife, sought damages for breach of contract to convey real property. In a trial without a jury, judgment was for defendant and plaintiffs appeal therefrom.

The defendant employed a real estate broker to sell her house and lot. On October 8, 1945, the plaintiffs, and a saleslady who was employed by the broker went to the home of defendant, inspected it and then left. (The saleslady will be referred to as the agent.) A few days later, in a telephone conversation, plaintiff Mr. Cook told defendant that he would like to have a construction engineer inspect the property. On October 12, 1945, Mr. Cook, the construction engineer, and the agent, returned to defendant's home. The engineer made an inspection of the house and the garage, and went away. Mr. Cook then told defendant that the engineer had stated that the house was in need of numerous repairs which would cost about $1,000, and Mr. Cook asked defendant to take such cost into consideration in determining the purchase price. After further discussion, they agreed

orally upon the price and terms, and Mr. Cook then paid $1,000 to the agent as a deposit, and the agent prepared and signed a deposit receipt for that sum. The receipt provided that an escrow should be opened at once, and that the plaintiffs should "deposit in said escrow an additional $2500.00 to complete the purchase of $15000.00." The defendant then signed that document at the bottom thereof agreeing to sell upon the terms stated, and Mr. Cook also signed it at the bottom thereof agreeing to buy upon said terms and adding thereto the following: "2nd mortgage to be balance difference between cash payment and $15,000 less 1st mortgage principal." The next morning, October 13, 1945, plaintiffs and defendant went to a bank where plaintiffs placed $2,500 in escrow, which was the balance of the down payment. The plaintiffs and defendant signed escrow instructions which provided in substance as follows: that plaintiffs were to obtain a loan (the amount was not specified) to be secured by a first mortgage on the property, and the amount of that loan was to be applied on the purchase price, and defendant was to accept a promissory note made by plaintiffs and secured by a second mortgage on the property for the amount of the purchase price then remaining unpaid; that the unpaid balance of the purchase price was to be payable in monthly installments of 1 per cent of the amount of the second mortgage, including interest at the rate of 5 per cent; and that the escrow should be completed by November 13, 1945. About November 2, 1945, defendant told the plaintiffs by telephone that she would not perform the agreement. About November 9th, the bank wrote a letter to defendant asking her to complete her part of the escrow, but she did not comply with the request. Plaintiffs arranged for a loan of $8,000 which was to be secured by a first trust deed on the property, and the lending agency sent proposed forms of the promissory note and the first trust deed to the escrow for plaintiffs to sign. On November 13, 1945, plaintiffs signed the note and trust deed, but the lending agency did not at any time deposit the $8,000 or any part thereof in the escrow. On said day plaintiffs made and placed in the escrow a promissory note in the amount of $3,500 for the balance of the purchase price, which note was payable to defendant in monthly installments of $25 or more including interest; and plaintiffs also made and placed in escrow a second trust deed on said property to secure that note. On the same day, and

without notice to defendant, plaintiffs signed an amendment to the escrow instructions which provided that the balance of $3,500 was payable in monthly installments of $25 or more including interest (which was less than 1 per cent of the unpaid balance as was required by the original escrow instructions). On November 29, 1945, plaintiffs signed another amendment to the escrow instructions requesting the return of all funds and ''papers executed'' by plaintiffs which had been placed in escrow. On the same day the bank returned to the plaintiffs the money which they had placed in escrow, but it retained the promissory notes and deeds of trust, upon each of which plaintiff Mr. Cook, on that day, had written as follows: ''Cancelled S. F. Cook.'' On December 13, 1945, defendant, who then had no knowledge that plaintiffs had terminated the escrow, gave plaintiffs written notice of rescission of the agreement to sell the property, and instructed the bank and the real estate agent to return any money deposited with them by plaintiffs. Thereupon, the real estate agent returned the $1,000 deposit to plaintiffs.

On March 20, 1946, plaintiffs commenced this action. The complaint alleged performance on the part of the plaintiffs; that defendant without cause and in bad faith refused to convey the property; that the reasonable market value of the property at the time of the breach was $20,000 and that plaintiffs were damaged in the sum of $5,000. The answer denied that the defendant in bad faith refused to convey the property, and alleged that plaintiff Mr. Cook and the agent fraudulently represented the value of the property to defendant for the purpose of inducing her to enter into the agreement; that defendant believed and relied upon those representations and by reason thereof signed the deposit receipt and escrow instructions; that the reasonable market value of the property on the day the agreement was made was $20,000, which value was known to plaintiffs but was unknown to defendant; that defendant had had no experience in real estate and was unfamiliar with its values; that plaintiff Mr. Cook and the agent informed the defendant that a promissory note secured by a second deed of trust would have the same value as cash and could be sold for face value; that the agent was not acting for the benefit of defendant but was acting for his own benefit or the benefit of plaintiffs. At the time of trial it was stipulated by the parties that the property was worth $20,000 on October 13, 1945 (the day

the escrow was made). The court found that all of the allegations of the answer were true; that the reasonable market value of the property on October 12, 1945, and at all times subsequent thereto was $20,000; that the plaintiffs failed to deposit at any time in escrow the sum of $8,000 for which the promissory note was executed; and that the plaintiffs failed to deliver to the escrow holder a promissory note in the amount of $3,500, payable in monthly installments of 1 per cent of the amount of the note, that is, $35 a month including interest; that on November 13, 1945, plaintiffs delivered to the escrow holder, without defendant's consent, an amendment to the escrow instructions providing that the balance of the purchase price be paid in installments of $25 a month including interest; and that on November 29, 1945, plaintiffs delivered another amendment to the escrow holder stating that defendant had not complied with the escrow instructions and requested that the papers and funds deposited therein by plaintiffs be returned to them; that the escrow holder delivered the money to plaintiffs who canceled the two promissory notes and the two trust deeds, and the escrow was terminated.

The defendant testified that she had purchased the property in 1941 for $8,000 and had spent $2,000 to redecorate it; that she had never had any experience in buying or selling real estate; that at the time of entering into the agreement she had no knowledge whatever as to the value of the property; that at the time she listed it for sale with the agent she told him she had no idea as to what its value was, but she had heard that real estate values had gone up; that she asked him to advise her as to its value, and he said he thought $15,750 was the most she could get for it; that the first time she had any conversation with Mr. Cook was on October 12, 1945, when he and the agent were in her home, and at that time Mr. Cook said that $15,000 was all that the property was worth because it was necessary to make various repairs and to make the garage larger; that she then told him that she had been informed that $15,750 was the market value of the property, but Mr. Cook reiterated that $15,000 was all it was worth; that the agent said that $15,000 was all defendant could hope to get for it; that Mr. Cook stated he had $3,500 in cash for a down payment; that the agent said as follows: that Mr. Cook could probably obtain a loan on the property to pay part of the purchase price; that de-

fendant would have to take a promissory note for the balance
of the purchase price, which would be paid in small monthly
payments; that the note would be equivalent to cash; that
plaintiffs would pay 5 per cent interest on the unpaid bal-
ance; that that was a good arrangement, and that defendant
could use the second trust deed as cash. Defendant testified
further that Mr. Cook then wrote a check for $1,000, and
the agent wrote a deposit receipt which defendant, the agent,
and Mr. Cook, signed; that at that time Mr. Cook said he
was paying top price for the house because he was in a
hurry to get settled; that he said he wanted to open an
escrow at once; that it was then too late to open an escrow
that evening, but they met at the bank early the next morn-
ing and signed escrow instructions; that she first discovered
that the property was worth more than $15,000 when she
began looking for another home; that upon discovering that
she could not find a place she notified Mr. Cook by telephone
that she would be unable to go through with the deal because
she had no place to move; that had she known the property
had a value in excess of $15,000 she would not have entered
into the agreement; that she had no advice as to the value
of the property, prior to the time she sold it, other than that
given to her by the agent and Mr. Cook; that she relied upon
their statements as to value, and upon their statement that
the trust deed was the equivalent of cash; that had she
known she could not use the second deed of trust the same
as cash she would not have entered into the agreement; that
after the escrow had been opened she inquired at a bank
as to the value of the promissory note, and was informed
that the bank would not buy it for face value; that on De-
cember 13th, the day she gave the notice of rescission, she
instructed her broker to return the $1,000 deposit to Mr.
Cook; that no one talked to her about changes in the pay-
ments on the second trust deed; that the bank (where the
escrow was) did not inform her by telephone or otherwise
of any changes in the second trust deed; that at the time
she gave the written notice of rescission she did not know
that plaintiffs had canceled their escrow instructions, and
she did not know that they had made any change in their
escrow instructions until after she had given notice of re-
scission.

The plaintiff Mr. Cook testified that at the time he first
inspected defendant's house he explained to defendant that

he had only $3,500 to pay down on a home and that it would be necessary for him to find a place within the range of that financing; that upon his second visit to defendant's home he told her that the construction engineer had stated that it would be necessary to repair the roof; that he mentioned that there were termites around the back of the garage; that portions of the cement in the driveway needed to be replaced; that it would be necessary to extend the length of the garage because his automobile was longer than the garage; that he told defendant it was the engineer's opinion that the total cost of repairs would be approximately $1,000, and he asked her if she would take that amount into consideration as a price reduction on the property; that he did not say anything to her about the value of the property; that the engineer did not advise him as to its value; that the agent said nothing in his presence to the effect that the second trust deed was the equivalent of cash. He also testified that the termite condition was to be taken care of by defendant, according to their agreement; that according to the original escrow instructions the monthly payments would have been $35 but that was not according to their verbal agreement.

Appellants contend that the findings with reference to "what happened in escrow" are "immaterial for the reason that the transaction was repudiated by the defendant, thereby making escrow instructions and deposits in escrow of money or papers immaterial." They also assert that the findings that defendant's refusal to convey was not in bad faith, and that plaintiffs were guilty of fraud, are not supported by the evidence. Respondent contends that appellants failed to perform their part of the agreement.

Appellants' assertion that "the transaction was repudiated by the defendant" is based upon defendant's oral statement of November 2d, that she would not perform the agreement. It appears, however, from the actions of appellants thereafter that they did not rely upon defendant's oral statement as a repudiation or regard it as an anticipatory breach of her agreement. On November 13th appellants signed the notes and trust deeds which were in escrow, and amended their escrow instructions, and purportedly attempted to complete their part of the escrow. On November 29th, when appellants canceled the escrow, they regarded the escrow as material. On that date, in their amendment to the escrow instructions, they said: "As seller has not complied with

escrow requirements, we hereby request that you return all papers executed by the undersigned and return all funds deposited by the undersigned.'' It is clear that appellants' conduct indicated that they regarded the escrow as material and that they did not treat the oral statement of defendant as an absolute refusal to perform. ''The refusal to perform must be treated and acted on as a distinct and unequivocal absolute refusal to perform the promise.'' (12 Am.Jur. 974, § 395; see, also *Rauer's Law & Collection Co.* v. *Harrell,* 32 Cal.App. 45, 67 [162 P. 125].) Defendant's oral statement, under the circumstances here, was ineffectual as a repudiation or cancellation of the escrow, and was not an anticipatory breach of agreement which excused performance by appellants of their agreement. ''What happened in escrow'' was material.

The appellants failed to perform the contract on their part to be performed. According to the escrow instructions, appellants were required to execute a promissory note for the unpaid balance of the purchase price, which note was to be made payable in monthly installments equal to 1 per cent of the original amount of the note. The original amount of the note was $3,500, and therefore the amount of each installment under the escrow instructions should have been $35. Appellants, however, on the last day of the escrow period and without the knowledge or consent of respondent, made the note payable in installments of $25 per month (instead of $35) and signed amended escrow instructions which provided that the unpaid balance was payable in installments of $25 a month (instead of 1 per cent of $3,500). The provision of the contract requiring the appellants to pay 1 per cent of the amount of the note or $35 per month was specific, and the act of appellants in making the promissory note payable in installments of a lesser amount was a failure to comply with the terms of the contract with respect to a material and substantial matter. The appellants also breached the contract with respect to another material matter, in that, they never deposited, or caused to be deposited, in escrow the $8,000 which they asserted they had obtained as a loan, nor did they deposit in the escrow ''the proceeds of a new loan'' as required by the escrow instructions, nor did they at any time deposit any money in the escrow except $2,500. In *Simpson* v. *Schurra,* 91 Cal.App. 640 [267 P. 384], which was an action for damages for breach of contract to sell real

property and wherein an escrow was involved, the court said at page 645: "One who sues another for breach of a contract must show that he has performed all conditions of the contract on his part which are precedent to performance by the defendant and that he is able and has offered to perform all concurrent conditions on his part, except when he is excused from such performance." The court said further therein at page 647: "They tendered only one mortgage instead of two as provided in the escrow instructions . . . and the tender therefore failed as a compliance with the instructions."

■ The appellants not only breached the contract themselves, but they rescinded or abandoned the contract on November 29, 1945. The unauthorized act of appellants on November 13th in changing the escrow instructions very materially to their own benefit, by decreasing the amount of the monthly installments, indicated that they did not intend to stand ready and willing to perform the escrow contract as originally written. The evidence shows that on November 29th, they terminated the escrow, withdrew the money deposited therein, and canceled the two notes and the two deeds of trust signed by them. They also recovered the money which they had paid as a deposit to the real estate agent. In other words, at the time they commenced this action they had recovered all the money they had paid, and they had canceled the notes and trust deeds, and had withdrawn from the escrow. Appellants base this action for damages on the contract. ■ An action for damages for breach of contract rests upon the theory that the contract is still in force. (*House* v. *Piercy*, 181 Cal. 247, 251 [183 P. 807].) As above shown, appellants did not keep the contract in force. Whether the conduct of appellants amounted to an abandonment of the agreement, or a rescission, or an acceptance of an offer to rescind, the result is that the contract was not kept alive and the appellants have received back all the money they had paid.

■ As above shown, the court found that defendant did not refuse in bad faith to convey the property. Section 3306 of the Civil Code provides that the measure of damages for breach of an agreement to convey real property "is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the

value of the estate agreed to be conveyed . . . ." The burden was upon appellants to prove that defendant acted in bad faith. (*Wilson* v. *Rosenkranz*, 112 Cal.App. 511, 513 [297 P. 44].) Under the finding that defendant did not act in bad faith appellants would not be entitled to the difference between the purchase price and the value of the property, and since all money paid by appellants had been returned to them, they would not, under that finding, be entitled to a judgment for the recovery of anything. By reason of the conclusions hereinabove stated, it is not necessary to discuss whether the evidence was sufficient to support the finding that the defendant did not act in bad faith.

 The evidence was not sufficient to support the finding that appellant Mr. Cook fraudulently represented the value of the property. Mr. Cook merely stated his opinion that $15,000 was all the property was worth. Defendant's own agent stated that $15,000 was all that defendant could hope to get for the property. Such evidence is wholly insufficient to justify that finding.

The judgment is affirmed.

Shinn, Acting P. J., and Vallée, J. pro tem., concurred.