[Civ. No. 20610. Second Dist., Div. Two. Feb. 8, 1955.]

DAVID S. ROBERTSON, Appellant, v. ANNA A. BOGERT, Respondent.

Robertson, Harney & Behr for Appellant.

Shepherd & Shepherd for Respondent.

FOX, J.—Plaintiff appeals from a judgment denying his right to recover damages for an alleged breach of a contract to convey real property.

The present litigation is a sequel to a suit for specific performance of the same contract which plaintiff commenced in April, 1952. In that suit, defendant* sought rescission and cancellation of the contract. The judgment in that case denied plaintiff relief ''by way of or in the nature of specific performance'' upon findings, among others, that the agreement was not just, fair or reasonable as to the defendant because the contract price was $50,000 and the value of the property $64,000. The affirmative relief of cancellation and revision prayed for by defendant was likewise denied. The judgment in that suit (hereafter called the first action) is now final.

On July 3, 1953, plaintiff filed the present action for damages for breach of a written contract for the sale of certain

---

*Originally, Anna Bogert and C. D. Bogert were the parties defendant. Upon the latter's decease, Mrs. Bogert was made, by stipulation, the sole defendant. For convenience, we will at all times refer to defendant in the singular, except when the term ''Bogerts'' is used.

real property owned by defendant for the sum of $50,000, alleging that at the time of defendant's breach the property had a market value of $64,000, and that he has been damaged in the sum of $14,000. Although it is provocative of serious doubt as to whether the complaint adequately alleges bad faith on the part of defendant, this possible deficiency in the pleading was not objected to below in any fashion. The answer denies the existence of a contract, defendant asserting that although the instrument is signed by her and Mr. Bogert it was signed in plaintiff's behalf by an agent lacking written authority (Civ. Code, § 2309); further, it is alleged that, prior to the commencement of any action, defendant gave notice to plaintiff that she would not perform thereunder and withdrew the offer. By way of further defense and in bar of plaintiff's action, defendant also pleaded the final judgment in the first action was res judicata and as constituting an election of remedies.

Upon the trial of the present matter, virtually the only evidence relied upon by the parties was the judgment roll in the first action.† In its findings in the instant case, the trial judge in large measure almost literally incorporated many of the findings of fact recited in the first action. So far as they are germane for the purpose of this decision, the findings in the case before us present the following picture of the transaction: Defendant Anna Bogert and her husband were the owners of 320 acres of land in Lancaster, California. Plaintiff was an attorney at law interested in purchasing said property in behalf of himself and two other persons. Ralph Boyd was a licensed real estate broker and a partner in the real estate brokerage firm of Boyd & White, located in Lancaster. Prior to March 17, 1952, Boyd undertook to act as plaintiff's agent in an endeavor to procure the Bogerts to sell their Lancaster property for the sum of $50,000 on terms which would entail a down payment as small as $5,000. Boyd was not to receive any specified compensation from plaintiff or his associates for his services in this transaction; instead, Boyd's services were being rendered in the anticipation that he would be compensated through the sale to plaintiff and his associates of other real property.

---

†It was stipulated that defendant had employed an attorney to defend the first action, to whom she paid a fee of $1,000; that she paid an appraiser a reasonable sum, to wit, $600 in connection with the defense of said action; and that she made numerous trips from her home in Lancaster to Los Angeles for the same purpose.

Boyd had known the Bogerts for about two years prior to March 17, 1952, and had acted as their agent in the sale of real property. The Bogerts were inexperienced in real estate transactions and had full confidence in Boyd's judgment, honesty and integrity. For about six months prior to March, 1952, the Bogerts resided in San Luis Obispo County. During this time, Lancaster was the scene of great activity in the real estate field. The Bogerts, however, residing at a distance therefrom, were not familiar with the current value of their property at the time of the transaction subsequently related. Mr. Bogert was so ill from a heart condition during the period beginning March 13, 1952, and continuing subsequent to March 25, 1952, that he was precluded from transacting business of any substantial extent. All of these factors with relation to the situation of the Bogerts were well known to Boyd.

Boyd undertook to negotiate with the Bogerts for the sale of their 320 acres to plaintiff. In this transaction, Boyd acted also as the agent for the Bogerts, who knew he was simultaneously representing the plaintiff, but had no other knowledge regarding the basis of Boyd's agency relationship with the plaintiff. As a result of these negotiations, between March 18 and March 20, 1952, the Bogerts each signed their names to an instrument by whose terms they agreed to sell plaintiff their acreage for the sum of $50,000, of which $5,000 was to be deposited as a down payment in escrow prior to the close thereof, plaintiff to pay the balance of $45,000, which was to be secured by a note and trust deed, in amounts of $5,000 or more per year, plus 6 per cent on the unpaid balance. This instrument was signed by Boyd, as agent, on behalf of plaintiff, who had orally authorized Boyd to execute the agreement. Boyd's authority to execute this agreement was at no time evidenced by any writing subscribed by plaintiff. The instrument also referred to the deposit by plaintiff of a check for $500, of which, however, Boyd was the payee.

The findings further recite that although the court in the "first action" found it not to be true that the Bogerts' consent to execute the above agreement was obtained by fraud on the part of Boyd, that court did find that, while acting as plaintiff's agent in the negotiations with the Bogerts, Boyd represented that the purchase price of $50,000 was a fair price and was the fair market value of their land, and urged them to sell; that Boyd well knew at the time that $50,000

was not a fair price and that a fair market value of said property was a sum in excess of $60,000; and in urging the Bogerts to sell, Boyd well knew that the price was inadequate, and it was to the disadvantage of the Bogerts to sell, in that he knew that the property could be sold at a price in excess of $60,000.

The findings proceed to relate the subsequent events as follows: On about March 22, 1952, Boyd, as plaintiff's agent, caused an escrow to be opened relating to the sale of the Bogert property and directed the preparation of escrow instructions. These instructions provided that any portion of the 320 acres "for which the buyer has wholly paid would be released from the lien of the trust deed securing a note of $45,000 at the rate of $156.25 per acre." No such provision appeared in the sales contract. These instructions were never signed by the Bogerts. Boyd also endorsed over to the escrow agent the check of $500, which at all times was retained by the escrow holder. No instructions were ever given either by the Bogerts or plaintiff relative to the disposition of the check and the Bogerts never received that check or any part of the proceeds thereof.

On about March 25, 1952, the Bogerts refused to enter the above escrow and notified plaintiff that they would not carry out the sale of the property under the terms of the above agreement and that they withdrew the offer to sell their property on those terms. At the same time, they made a written offer to plaintiff to sell the property to him if he would pay in addition to the $50,000, the sum of approximately $8,325. Thereupon, on April 2, 1952, plaintiff filed the "first action" for specific performance, which was denied him after a five-day trial, on the ground that the contract providing for a consideration of $50,000 as the purchase price of property having a market value of $64,000 was not fair or reasonable.

The court's last finding is that "the sellers had just cause for refusing to and not performing the alleged agreement of sale, and *were not guilty of bad faith* in refusing to and not performing the same." (Italics added.)

Plaintiff contends that certain of the findings of fact are in truth conclusions of law, and that these "conclusionary" findings, as well as certain other conclusions are erroneous and against the law. Some of the principal findings and conclusions thus attacked are (1) the finding that no contract was formed because the instrument of sale was executed for

plaintiff by an agent lacking written authority (see Civ. Code, § 2309) ; (2) the conclusion that the contract was invalid under the provision of section 1624 of the Civil Code in that it was executed by an agent of plaintiff who was not authorized in writing to subscribe the instrument; (3) the conclusion that the sellers received no consideration for their promise to sell; (4) the conclusion that before plaintiff ratified the agreement of his orally authorized agent by bringing suit the proposed sellers withdrew the offer therein contained; (5) the finding that plaintiff rejected the offer contained in the instrument of purported sale by directing the escrow agent to prepare instructions differing from the terms and conditions therein recited; and (6) that plaintiff failed to perform the obligations on his part to be performed under the alleged agreement in that he did not place $5,000 in escrow, nor did he execute the note and trust deed in the amount of $45,000 referred to therein. Certain other findings are objected to on the ground that they find no support in the evidence.

In view of the fact that the court concluded plaintiff was not entitled to a recovery of the difference between the price agreed to be paid and the actual value of the property to be conveyed at the time of the breach because the Bogerts were found not to be guilty of bad faith in refusing to perform, nor was plaintiff entitled to any other damages, it becomes unnecessary, if such finding is supported by the record, to consider in detail the validity of the findings and conclusions previously enumerated. ■ It is fundamental that if a judgment is amply supported by findings which are sustained by sufficient evidence, questions relative to other findings become immaterial upon appeal and may be disregarded. (*Logan* v. *Forster,* 114 Cal.App.2d 587, 602 [250 P.2d 730] ; *American Nat. Bank* v. *Donnellan,* 170 Cal. 9, 15 [148 P. 188, Ann.Cas. 1917C 744] ; *Moore* v. *Mosher,* 88 Cal. App.2d 324, 325 [198 P.2d 714] ; *Guild* v. *Stockton Ice Rink Co.,* 77 Cal.App.2d 17, 22-23 [174 P.2d 338].) ■ Further, it has been consistently held that a judgment will not be reversed because certain conclusions of law are not legally sound, if the judgment is in fact a proper one. (*Spencer* v. *Duncan,* 107 Cal. 423, 426 [40 P. 549] ; *Platner* v. *Vincent,* 194 Cal. 436, 444 [229 P. 24] ; *Hammond Lbr. Co.* v. *Gordon,* 84 Cal.App. 701, 706 [258 P. 612] ; *Fitts* v. *Mission Health etc. Shop,* 58 Cal.App. 362, 364 [208 P. 691].) As stated in *Spencer* v. *Duncan, supra,* in quoting the language of two

decisions of the Supreme Court (pp. 426-427): " 'But we do not reverse for what we regard as *bad logic*, but for what we consider *bad law*. . . . Where some of the conclusions of law in a decision are not properly drawn from the facts found this is no ground for reversing the judgment, if the ultimate conclusion upon which the judgment rests is not erroneous in view of the facts found.' " (Emphasis added.)

Thus, even assuming *arguendo* that the contract between the parties was in force at the time of defendant's refusal to convey, plaintiff has failed to establish his right to the recovery of damages. Section 3306 of the Civil Code provides that the measure of damages for breach of an agreement to convey real property "is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land." Clearly, there is no showing of any expense incurred in connection with the examination of title and the preparation of necessary papers, and the undisputed finding is that defendant never received the $500 which plaintiff paid to Boyd as a deposit. That money was deposited in the escrow to which defendant never became a party, and has never been claimed by defendant.

Plaintiff's right to any recovery, therefore, must rest upon his assertion that he is entitled to the damages outlined in section 3306 of the Civil Code because of the bad faith of the Bogerts in refusing to convey. ▇ It is true, of course, that a refusal to convey property pursuant to contract obligation, if such refusal is found to be without just cause or excuse, may be sufficient to show bad faith. (*Farnsworth* v. *Hunter*, 11 Cal.2d 27 [77 P.2d 840].) ▇ However, the question of bad faith is a factual one. (*Engasser* v. *Jones*, 88 Cal.App.2d 171, 177 [198 P.2d 546]; *Hamaker* v. *Bryan*, 178 Cal. 128 [172 P. 391].) ▇ The burden of proving defendant had acted in bad faith rested upon plaintiff. (*Wilson* v. *Rosenkranz*, 112 Cal.App. 511, 513 [297 P. 44]; *Cook* v. *Norstrand*, 83 Cal.App.2d 188, 197 [188 P.2d 282].) ▇ Plaintiff's attack on the finding that defendant did not act in bad faith is not supported by the record. On the contrary, there is substantial evidence to support that finding. This evidence, as carried into the findings, is that the Bogerts were

inexperienced in real estate transactions, lived at a distance from the site of their property, and were unaware of the current value of their property caused by the recent upsurge of activity in the real estate market in Lancaster; that at the time of the transaction, Mr. Bogert's cardiac condition inhibited his ability to engage in business dealings; that Boyd, who was their agent as well as plaintiff's and in whose probity and honesty they trusted, was aware of all those facts; that he represented to them that $50,000 was a fair price and urged them to sell to plaintiff though he knew that the price was inadequate and that it was to their disadvantage to sell at that price and that their property could be sold for more than $60,000. It is thus clear that while Boyd's conduct was found, somewhat inexplicably, to fall short of fraud, there was present in connection with his procurement of the contract a substantial degree of imposition and over-reaching on his part. In the light of these probative facts, the court was fully warranted in finding an absence of bad faith on defendant's part in refusing to convey the property and under accepted rules of appellate review we may not disturb such finding.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.