[Civ. No. 7184.   Third Dist.   Apr. 17, 1946.]

Estate of ELLA FIDDYMENT, Deceased. RUSSELL F. FIDDYMENT, Appellant, v. MABEL E. HAMAN et al., as Executrices etc., Respondents.

Anthony J. Kennedy for Appellant.

K. D. Robinson and Fontaine Johnson for Respondents.

THOMPSON, J.—This is an appeal from an order of the trial court appointing respondents executrices of the last will and testament of Ella Fiddyment, deceased, and denying the application of appellant for letters of administration with the will annexed.

Ella Fiddyment died during the month of August, 1939, being survived by three sons and three daughters, all of legal age. Five years later, on August 19, 1944, appellant filed his petition for letters of administration on the estate of said decedent, alleging that no will had been found and that to his best knowledge and belief decedent had died intestate.

On September 6, 1944, respondents filed their objections to the granting of letters of administration to appellant upon several grounds, to wit: That decedent left a will and codicil thereto naming respondents as executrices; that prior to her death deceased placed all of her property in a trust which was then terminated; that so far as respondents knew there was no estate belonging to decedent not included in said trust; that for these reasons respondents did not file an application for letters testamentary; and that respondents and not appellants were entitled to letters testamentary.

On the same day respondents filed their petition for the probate of the will of said decedent and requested that they be appointed executrices thereof.

Thereafter, on September 26, 1944, the date set for the hearing of the probate of the will, appellant filed objections to the granting of letters testamentary to respondents on the grounds that: (1) the respondents had failed to produce the will although they had knowledge of the death of the decedent for five years, (2) the failure of said respondents to produce the will showed on their part a lack of competency, and (3) likewise a lack of integrity, and (4) by said failure respondents had renounced their right to serve as executrices under said will.

Also on the same day appellant filed his petition for letters of administration with the will annexed, alleging that by reason of the said delay respondents had renounced their right to serve as executrices.

On February 16, 1945, the trial court made its order grant-

ing the petition of respondents for probate of said will, and denying appellant's petition for letters of administration with the will annexed.

Appellant has raised three issues on appeal: (1) that the failure of respondents to file said will for probate within thirty days constitutes a renunciation to act as the executrices thereof, (2) that respondents have not shown good cause for their delay in producing the will, and (3) that knowledge of the attorney of the existence of the will must be imputed to the executrices.

From the transcript it appears that Mr. K. D. Robinson, who had acted as attorney for the estate of the deceased's husband and for the decedent herself since her husband's death, had drafted decedent's will on June 13, 1934, and retained the same in the files in his office ever since, with the exception of a few days immediately following the execution thereof, when, as he testified, according to the best of his recollection the decedent had the will in her possession. He further testified that decedent had established a trust to be terminated five years after her death, to which had been transferred all of her property except certain real property situated in the city of Berkeley; that he did not recall whether or not he had ever notified the executrices named therein nor anyone else of the existence of the will; that after the creation of the trust and the transfer of title to the Berkeley property the decedent had no property; and that he had dismissed the matter of the will and codicil from his mind. The witness further stated that he had acted as attorney for the trust estate and had represented the executrices in their individual capacities, although this was denied by one of them, Mrs. Haman, on direct examination.

Mrs. Haman testified that her mother, with whom she was living, had told her of the existence of the will, and that witness knew she was named as an executrix thereof, and that because of their close relationship her mother had discussed many matters with her relating to the property, although there had been no discussion between them concerning either the terms of the trust or the will. She further testified that she and her mother maintained a joint bank account at a Berkeley bank, but that only her mother drew checks against it. It was also her testimony that she felt there was no need to probate the will by reason of the fact that all of the property had been placed in the trust. She concluded by stating she had made

no attempt to find the will, nor had she ever talked to Mr. Robinson concerning the possibility of a probate of her mother's estate or the existence of a will.

Mrs. Chilton, the other named executrix, testified that she had no knowledge of the will, that her mother never discussed the will with her, and that Mr. Robinson had not informed her that he had the will in his possession.

Another daughter testified to a conversation which she thought had occurred several years previously between Mr. Robinson and herself, at which time she was informed that the trust followed very closely the wording of the will. One of decedent's sons testified that he lived with his sister, Mrs. Haman, but that he had never been advised of the existence of the will. Appellant herein testified that he had seen Mr. Robinson several times a year for many years, and that he had no knowledge of the will until it was filed for probate.

It is a well settled principle, subject only to such limitations as may be imposed by law, that a person has a right to select whomsoever he may desire to carry out the terms of his will (*In re Bauquier*, 88 Cal. 302 [26 P. 178, 532]), and that his expressed desire should not be thwarted unless the plain provisions of the law or the interests of justice otherwise demand it. (11A Cal.Jur. 271; *In re Chadbourne*, 15 Cal.App. 363 [114 P. 1012].)

Admittedly the respondents do not come within the class of persons expressly mentioned in section 405 of the Probate Code, and therefore, under the circumstances herein, their right to act as executrices of said estate would be controlled by the provisions of section 324 of the Probate Code, which provides:

"If the person named in a will as executor, for thirty days after he has knowledge of the death of the testator and that he is named as executor, fails to petition the proper court for the probate of the will and that letters testamentary be issued to him, he may be held to have renounced his right to letters, and the court may appoint any other competent person administrator, unless good cause for delay is shown."

In its interpretation of this section, the Supreme Court, in *Estate of Randall*, 177 Cal. 363 [170 P. 835], in affirming an order of the trial court revoking the letters of administration with the will annexed previously issued to a sister of the decedent and granting, instead, letters to the widow who had been named as executrix in the will, stated that the renuncia-

tion referred to in said section is not the equivalent of a voluntary renunciation, and that the action of the trial court in appointing the named executrix as provided in the will must be sustained in the absence of a showing of an abuse of discretion. In other words, as the district court in *Estate of Martin,* 31 Cal.App.2d 501, 507-508 [88 P.2d 234], succinctly stated, "it should be further noted that section 324 of the Probate Code is not mandatory but is discretionary." (See, also, *Estate of Vernon,* 182 Cal. 91 [187 P. 11]; *Estate of King,* 4 Coffey's Prob. Dec. 10, 20.)

A like conclusion was reached in *Rice* v. *Tilton,* 13 Wyo. 420 [80 P. 828, 832], wherein the construction of a code section identical with ours was at issue and it was held that:

"Upon an examination of the entire record, we have arrived at the conclusion that there was not such an abuse of discretion on the part of the district court, if in fact there was any, as to warrant us in interfering with its judgment."

It might be concluded from the evidence that Mrs. Haman had such knowledge as is contemplated by said section 324. Still, Mrs. Chilton, the other named executrix, denied any knowledge at any time concerning the will or her appointment. Therefore, the fact, if it be a fact, that one of the co-executors named in the will was disqualified to act or should be deemed to have renounced her right to act, would not affect the right of the other to be appointed and to carry out the terms of the will. (See Prob. Code, § 408; *Estate of True,* 120 Cal. 352, 353 [52 P. 815].)

It is difficult to see how the doctrine of imputed knowledge, relied on by appellant, can have application to the situation herein. This is not the case of a transaction between a principal and a third person, wherein the principal is sought to be charged with liability by reason of facts which it would be the agent's duty to communicate to him. On the question of renunciation, the daughters, if they had been aware of the circumstance, that they had been named as executrices in the will, were entitled at their election to renounce or accept the trust. Whether they did renounce it is a question of actual intention which depends on actual and not imputed knowledge. As the author of the Restatement of the Law of Agency, volume 1, page 613, section 275, points out:

"In many situations, in order for one to be responsible, it is necessary that the act should be done with knowledge in a subjective sense and it is not sufficient that one has means of information."

The case of *Flinn Realty Corp.* v. *Charter Constr. Co.*, 181 App.Div. 610 [169 N.Y.S. 116, 118], involved the question of the validity of a rescission of a contract for an exchange of properties on the ground of mistake. The defendant contended that the plaintiff had knowledge of the true facts because its agent, a broker, had such knowledge. In overruling the contention the court stated:

"As to the fact of constructive notice by reason of his agency, this fact is without significance, because here is a question of actual intention, and *actual intention can only be judged by actual knowledge and not by constructive knowledge.*" (Italics added.)

Other examples of situations where the doctrine of imputed knowledge is inapplicable are furnished in the cases of *Pacific Vinegar etc. Works* v. *Smith,* 152 Cal. 507, 514 [93 P. 85], *Burns* v. *McCain,* 107 Cal.App. 291, 296 [290 P. 623], and *Palo Alto etc. Assoc.* v. *First Nat. Bank,* 33 Cal. App. 214, 224-225 [164 P. 1124].

In any event, appellant fails to show that the conduct of respondents, whether or not it resulted from ignorance of the facts, was in any way prejudicial to appellant. As the court stated in *Estate of True, supra,* at page 353:

"The appellant derives his right to be appointed an executor from the testator, and not from the respondent [coexecutor]. The appointment of each is a part of the testator's will, equally with the disposition made by him of his estate. The execution of the will is a trust that has been conferred upon each of them by him, and neither of them can be estopped from carrying out this trust by reason of any conduct toward the other. While the failure of the appellant to apply for letters until after they had been issued to the respondent might have precluded him from claiming a right to them, so long as those letters were in force, he is not estopped by reason of his renunciation from claiming them at any time before they were granted to her."

Again, in the case of *Estate of King, supra,* the court observed (p. 20):

"In what has been said section 1301 is not overlooked, wherein it is provided that a failure for thirty days to petition for letters may be held to amount to a renunciation unless good cause for delay is shown; but the cause for the delay here sufficiently appears, and even if no such cause appeared, there would be no occasion for the court to exercise the dis-

cretion given by this section against the executors, for the delay has resulted in no injury to the persons interested under the will, or to the heirs of the testator.''

Appellant next challenges the assertion of respondents to the effect that, it appearing that no property existed in the estate as distinguished from the trust, and hence that there was no need for an administration of the estate, consequently the delay in making application for letters testamentary was shown to be excusable for ''good cause,'' within the meaning of section 324 of the Probate Code. In this connection appellant points out that under section 571 of the Probate Code it is the duty of the executor to marshal the assets of the estate and take possession of all of the decedent's property. From this he reasons that, on the authority of *Estate of Schwartz,* 67 Cal.App.2d 512, 521 [155 P.2d 76], the failure of the respondents to comply with the provisions of said section of the code amounts to a showing of hostility toward the estate and precludes the exercise of any discretion on the part of the trial court in granting respondents' petition for letters testamentary.

We do not so understand the Schwartz case. There, one of two named executors applied for letters testamentary. The other executor instituted proceedings to contest the will on the ground that the testator was of unsound mind and therefore without testamentary capacity at the time she executed the document. The district court said that, as the course of conduct followed by the contestant was inconsistent with any desire on his part to act as a coexecutor, the evidence was sufficient to support the finding of the trial court that the contestant had refused to act, and that the order granting letters to the other applicant alone was proper.

Applying the rule in the Schwartz case to the present controversy, it would appear that, as neither of the respondents herein is contesting the will or declining to act thereunder, letters testamentary should issue to them, or one of them, unless it can be said as a matter of law that the acquisition by respondents of certain real and personal property by gift from the decedent prior to her death defeats any showing of good cause for the respondents' failure to file their petition sooner.

In the previously cited case of *In re Bauquier,* objections were made to the appointment of the executrix named in the will on the ground that, by means of intimidation, falsehood,

fraud, deceit, misrepresentation, and undue influence, she had induced her father to ''assign, set over and deliver'' certain real and personal property, and that because of such fact she was incompetent to act. The trial court found that her position was antagonistic and hostile to the estate, and therefore she was incompetent to act as executrix. In reversing that order, the Supreme Court held that the fact that she claimed property as her own which the other legatees claimed belonged to the estate would not of itself, and without some reflection on the honesty of her claim, show a want of integrity, and stated:

''We feel entirely satisfied that the words 'want of integrity,' found in section 1350 of the Code of Civil Procedure, do not apply to a case where there is a simple conflict of interest in regard to the estate between the executor named in a will and the other legatees. We are also satisfied that if the legislature had designed to make such a conflict of interest a cause for refusing to appoint an executor so named, such intention would have been manifested by language more apt for that purpose than is to be found in that section of the Code of Civil Procedure.

''We may add that while the court is authorized to refuse to appoint an executor named in a will for want of integrity, yet, for manifest reasons, this power should not be exercised except upon clear and convincing evidence establishing such disqualifying fact.

''The executor may always be removed after appointment unless he discharges the duty of his trust faithfully and as directed by law.''

It follows that the so-called hostile and antagonistic acts of the respondents were not in themselves or necessarily a disqualifying factor.

For the foregoing reasons the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.