[Civ. No. 15788.   First Dist., Div. One.   Apr. 28, 1954.]

PRESTON E. SNOOK, Respondent, v. E. M. NETHERBY, Appellant.

Breed, Robinson & Stewart and Richard K. Dutton for Appellant.

Chase & Irving for Respondent.

McMURRAY, J. pro tem.*—Defendant appeals from a judgment ordering reformation of a contract for sale of real estate and awarding damages to plaintiff for a breach of such contract.

Appellant in 1950 listed certain property for sale with a number of real estate brokers, including the Metropolitan Realty Company which employed a Mr. Bryant as a salesman. On May 20, 1950, Mr. Bryant obtained a deposit receipt

*Assigned by Chairman of Judicial Council.

signed by respondent which offered to purchase the property for $55,000; recited the receipt of a deposit of $5,000; stated that: "The balance of said purchase price is to be paid within thirty days from date hereof . . ."; bore the date "May 20, 1950"; recited: "That the essence of this Agreement is time" and had the balance of this provision stricken—a provision that the broker might extend period of performance for thirty days and contained the following addition, inserted by Mr. Bryant on his own initiative: "Acceptance of this offer shall be made by 5:00 p. m. May 25, 1950."

Mr. Bryant presented this offer to appellant on about May 24, 1950. She refused to accept it and, on the face of the deposit receipt, she struck the $55,000 figure and wrote on the face thereof the figure of $62,000, changed the amount of broker's commission therein set forth from $2,750 to $3,100, and then signed the deposit receipt. Respondent refused to accept this counteroffer.

Thereafter, on May 27, 1950, Mr. Bryant obtained from appellant an authorization to sell the property for $58,500 which included a $1,500 broker's commission. On May 31, 1950, Mr. Bryant succeeded in getting respondent to agree to this last counteroffer. Instead of preparing a new deposit receipt, Mr. Bryant made the following alteration to the receipt dated May 20, 1950: He scratched out "Sixty Two Thousand" written thereon by appellant and wrote in the amount "Fifty eight Thousand five hundred." He scratched out the proviso that "Acceptance of this offer shall be made by 5:00 p. m. May 25, 1950," and inserted certain requirements relative to the assumption of existing loans on the property, and struck out provisions relative to real estate commission.

The same day Mr. Bryant took this much amended deposit receipt to appellant who initialed the changes. The date on this receipt still read: "May 20, 1950," and the recitation "The balance of said purchase price is to be paid within thirty days from date hereof . . ." still appeared unchanged.

At the time Mr. Bryant received respondent's agreement to this deposit receipt there was conversation to the effect that respondent was leaving on a three-week vacation, but there was no explicit discussion of the time covered by the deposit receipt. There is no evidence that Mr. Bryant informed appellant that the time for performance by respondent was to be computed from May 31, 1950, the date of signing, rather than from May 20, 1950, the date appearing on the deposit receipt, nor that he told appellant that re-

spondent understood the time would run from the later rather than the earlier date.

About June 10, 1950, Mr. Bryant testified that he first noticed that the agreement still bore the date of May 20, 1950, whereupon he phoned appellant seeking an extension to June 30, 1950. According to Mr. Bryant appellant gave an equivocal answer to this request. Thereafter on June 22, 1950, after several attempts by Mr. Bryant to get in touch with appellant, Mr. Bryant had his attorney write appellant a letter which stated relative to the requested extension: " . . . which extension you declined to give . . . " and then stated that the requested extension was unnecessary since the parties on executing the deposit receipt had, by mistake, neglected to change the date thereof from May 20th to May 31st. Appellant answered this on June 26, 1950, and denied that there had been any mistake in not changing the date and that appellant considered the deposit receipt breached by respondent's failure of timely performance. On June 27, 1950, respondent deposited the balance of the purchase price with the designated title company. This was after respondent had been advised by appellant that she considered the deal off.

Sometime after June 19, 1950, appellant listed the same property with several other agents and finally sold the property for a total price of $63,000 to another purchaser on about July 1, 1950. This price included $1,000 which was put in escrow pending certain construction done on the property which cost appellant $1,000, and a real estate commission of $2,000, leaving appellant a net price of $60,000.

The trial court held that Mr. Bryant as appellant's agent made statements to respondent relating to the date on which the 30-day period was to start running which justified reformation of the deposit receipt so as to provide that such period should run from May 31, 1950; that appellant's sale of the property to others was a breach of this contract, and that respondent was entitled to damages of $4,500 less a three per cent real estate agent's commission thereon, leaving a total judgment of $4,365 together with interest from the date of the breach. The findings state that appellant knew of the mistake relative to the date of the contract and wrongfully and in bad faith put it out of her power to perform the agreement by conveying it to third parties. This judgment adopts the measure of damages set forth in section 3306 of the Civil Code.

Appellant urges that no contract ever came into being as

there was no real agreement as to date; that therefore the court erred in granting a reformation and, in substance, that Mr. Bryant, by making the representations to respondent, exceeded his authority and that therefore appellant was not bound by these representations.

Respondent contends that appellant is bound by the acts of her agent, Mr. Bryant, and that she "undoubtedly" understood that respondent had thirty days from May 31, 1950, to complete performance. Respondent also states that appellant at the time of acceptance of the final offer could have "clearly" provided that the thirty-day period should run from May 20, 1950.

The language of the deposit receipt seems as clear as possible. Respondent also urges that since appellant had not performed her obligations under the agreement she was in default under the provisions of section 1439 of the Civil Code. That section is inapposite here since it merely states that before one can enforce a contract he must perform his own obligations thereunder. This is not so in the instant case as appellant is not seeking to enforce any contract. Respondent also asserts that appellant did not complete this transaction because of a more lucrative sale. This assertion is without any support in the record. Respondent further urges that all uncertainties in the contract are to be resolved against appellant since her agent prepared the contract.

In a memorandum opinion filed by the trial judge it is stated that at the time respondent signed the deposit receipt the agent of appellant assured respondent that he would have thirty days after May 31, 1950, to complete the transaction, and that appellant was bound thereby.

The court's statement is based upon the theory of imputed notice and is certainly a valid ground to reform the contract here. Restatement of Agency, section 272 states: " . . . the liability of a principal is affected by the knowledge of an agent concerning a matter'. . . upon which it is his duty to give the principal information." Here the agent, Bryant, knew of respondent's understanding regarding the time of performance and failed to inform appellant, his principal, thereof at the time appellant approved and initialed the final written agreement. The fact that the agent did know of such facts at that time is a distinguishing feature which removes it from the rule of *Clements* v. *Rankin*, 83 Cal.App. 2d 779 [189 P.2d 725], cited by appellant, because at the time of appellant's acceptance here notice of the terms to

which respondent agreed were imputable to her, whereas in the cited case the agent made his misrepresentations after the final offer. Respondent was entitled to assume that the agent would inform his principal of these terms, and under the rule set forth in the Civil Code, section 2332, the court properly ordered reformation.

The judgment and the damages awarded here are based upon the provisions of section 3306 of the Civil Code which provides: "The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; *but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land.*" (Italics added.) The record before this court is devoid of any indication of bad faith on the part of appellant

Respondent states that appellant breached the contract because of a more lucrative offer. The only evidence as to this is to the effect that it was received "a few days" after June 19, 1950, and that escrow instructions relative to this offer were dated June 28, 1950. Appellant, by her letter of June 26, 1950, had expressed her intention to treat the contract herein as breached, and did not consummate the sale until July 1, 1950. None of this is evidence that appellant was motivated to breach this contract by a more lucrative offer.

Respondent states that the fact that appellant visited the escrow holder to see if money had been deposited shows her bad faith. It would more readily show that she wanted the money, a wish that shows in much of the record. Appellant consistently resisted extensions of time whenever approached.

There is no showing of any sort that appellant was ever informed of the fact that respondent understood that any date other than May 20, 1950, was to be used as the commencement of the thirty-day period for performance, until the agent caused the letter of June 22, 1950, to be sent her. There is no showing of actual knowledge in appellant upon which to base a judgment sounding in bad faith.

While breach of contract may be based upon imputed knowledge, it would be a contradiction in terms to base breach in bad faith upon imputed knowledge.

The term "bad faith" necessarily requires actual rather than imputed knowledge.

Section 275, Restatement of Agency, states: " . . . *except where knowledge as distinguished from reason to know is important,* the principal is affected by the knowledge which an agent has a duty to disclose to the principal . . . to the same extent as if the principal had the information." (Italics added.) And in the comment (p. 613) : "In many situations, in order for one to be responsible, it is necessary that the act should be done with knowledge in a subjective sense and it is not sufficient that one has means of information." This language appears to be controlling here. Certainly bad faith requires subjective knowledge. None is here shown.

There was no damage other than damage for a bad faith breach shown anywhere in this record. The judgment, therefore, is reversed.

Peters, P. J., and Bray, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 23, 1954. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.