[Civ. No. 19816.   First Dist., Div. Two.   Feb. 26, 1962.]

W. L. CHALMERS et al., Plaintiffs and Respondents, v. C. R. RARAS et al., Defendants and Respondents; NICK J. DANNA et al., Defendants and Appellants.

Machado, Feeley & Machado and Kenneth Machado for Defendants and Appellants.

Cottrell, Hofvendahl, Roessler & Whitney and Russell L. Hofvendahl for Plaintiffs and Respondents.

Gallagher & Rainville and Paul T. Gallagher for Defendants and Respondents.

SHOEMAKER, J.—This is an appeal by defendants and cross-complainants Danna and Morgan (1) from the judgment in favor of plaintiffs Chalmers granting specific performance of a contract to convey real property, and (2) from the judgment denying them damages under their cross-complaint.

C. R. Raras and Eugenia Raras, husband and wife, were the owners of approximately 10 acres of farming land in

Santa Clara County. They employed William Baird, a real estate broker, and A. C. Rosene, his salesman, to sell this property. Willard and James Chalmers, brothers and partners in an equipment rental business, desired to purchase some property on which to relocate their business. They employed Howard Blazzard, a real estate broker, to get them a suitable property.

On December 16, 1958, Blazzard approached the Raras in regard to buying a portion of their land for the Chalmers brothers. As a result of their meeting, the parties arrived at an agreement as to a portion of the 10-acre piece which Mr. Raras indicated they would be willing to sell. Blazzard then obtained from the Chalmers authorization to make an offer on the property.

On December 18, 1958, Blazzard went to the Raras' home. Although Mr. Baird was not present at this meeting, both Mr. Raras and Blazzard consulted with him by phone during the course of their discussion over the property. They then signed a deposit receipt agreement to convey approximately 3½ acres of their land to the Chalmers for a net price of $12,500, to be paid within 90 days. On the same day, Willard Chalmers signed the deposit receipt on behalf of himself and his brother.

While these proceedings were going on, Rosene located buyers whom he believed were interested in purchasing the entire 10 acres. On December 22, 1958, Baird and Rosene met with Nick Danna, one of these prospective buyers, at the Baird office. While the parties were negotiating a possible sale, Blazzard arrived at Baird's office to arrange for the Chalmers to go into immediate possession of the 3½ acres they had contracted to buy. Rosene took him outside, said that he had a chance to sell all of the Raras' property, and asked him to wash out the deal with the Chalmers. Blazzard replied that this was impossible, as the Chalmers definitely wanted to go ahead with the purchase and were already working on the financing. Blazzard then went into Baird's office, and Rosene took Mr. Danna outside, whereupon Baird asked Blazzard to wash out the deal with the Chalmers, and Blazzard again replied this could not be done. Blazzard then went to the title company, where an escrow was opened.

Baird and Rosene continued their dealing with Mr. Danna, and procured his signature to a deposit receipt providing for the purchase of the entire 10 acres by Nick and Eunice Danna, and Jay V. and Marie Morgan. The deposit receipt was ex-

pressly made "subject nevertheless, to the rights, if any, of the parties offering to buy the easterly strip of the said property, being 125 feet on Laurelwood and running to the Bayshore Highway" (the Chalmers' piece). The signatures of Mr. and Mrs. Raras were later obtained at their home.

On January 15, 1959, Rosene informed Nick Danna that it was all right for him to purchase the entire 10 acres. The Raras then executed a grant deed of the entire 10-acre tract to the Dannas and the Morgans, which deed was duly recorded on January 16, 1959.

Willard and James Chalmers then commenced this action, naming as defendants Mr. and Mrs. Raras, the Dannas, the Morgans, Mr. Baird, and Mr. Rosene, seeking specific performance of their contract of December 18, 1958. The Dannas and the Morgans cross-complained against defendants Raras, Baird and Rosene, seeking damages in the amount of $25,000 in the event that specific performance be awarded to plaintiffs Chalmers.

After a court trial, the court held, so far as pertinent to this appeal, that (1) plaintiffs Chalmers were entitled to specific performance of their contract to purchase the 3½ acres from the Raras at the agreed price of $12,500, and (2) cross-complainants, the Dannas and the Morgans, were not entitled to recover damages from the Raras, Baird, and Rosene, for breach of their contract of sale.

Appellants first contend that the evidence conclusively establishes that they were bona fide purchasers for value, without notice, either actual or constructive, of the Raras' prior contract with the Chalmers; that they had immediately recorded their deed, which was prior to any deed or instrument showing any interest in the property by the Chalmers, hence their rights are superior to any of the Chalmers; and that the trial court erred in granting specific performance in favor of respondents Chalmers.

We find no fault with appellants' assertion that recordation will protect a subsequent purchaser in good faith against an unrecorded instrument executed prior to this recordation. (Civ. Code, §§ 1213, 1217.) However, in order for the subsequent purchaser to prevail, he must show that he took in good faith and without notice of the prior unrecorded instrument. The burden of showing such lack of notice is upon the subsequent purchaser. (*Amerco, Inc.* v. *Tullar* (1960) 182 Cal.App.2d 336, 338 [6 Cal.Rptr. 71].)

In the present case, the trial court found that appel-

lants were put on notice of the respondents Chalmers' rights by the specific provision in their contract of purchase and sale, "subject nevertheless, to the rights, if any, of the parties offering to buy the easterly strip of the said property . . ." The trial court further found that at the time of the execution of this contract, appellant Nick Danna (who was acting as agent for the other appellants) had been informed by Rosene that another party was interested in part of the property in question. Although appellants were told sufficient facts to put them on inquiry and require further investigation as to the rights of these other parties, appellants made no such inquiry, either as to the names of the other parties or the nature of the prior transaction. To the contrary, appellants chose to rely on Rosene's statement that the "other parties" were no longer interested in the property.

Appellants argue that this provision was not sufficient to require them to investigate further, even if it was sufficient to put them on notice. Appellants take the position that they were entitled to rely on the representations of Rosene that the other parties were no longer interested in the property and that they were free to purchase the entire 10-acre parcel.

There is no validity in appellants' contention that the provision in their contract was not sufficient to put them on notice of respondents Chalmers' rights. Although Rosene had stated that this provision was necessary because of a prior "offer," appellants were certainly chargeable with knowledge that a purchase and sale agreement is not normally made "subject" to the rights of parties who have done nothing more than make an offer. In our opinion, appellants had sufficient facts to compel further inquiry and cannot now claim to be bona fide purchasers merely because they chose to make no investigation as to the "other parties."

Appellants' further assertion that they were entitled to rely on Rosene's representation that the other parties were no longer interested in the property is equally without merit. Appellants urge that a buyer is entitled to rely on the representations of a seller and is not required to make an independent investigation of the facts. In support of this position, appellants rely upon *Ashburn* v. *Miller* (1958) 161 Cal.App.2d 71 [326 P.2d 229]; *Williams* v. *Graham* (1948) 83 Cal.App.2d 649 [189 P.2d 324]; *Macco Construction Co.* v. *Fickert* (1946) 76 Cal.App.2d 295 [172 P.2d 951]; and *Norris* v. *Hay* (1906) 149 Cal. 695 [87 P. 380]. In each of the cases cited, the courts were called on to determine the rights of a purchaser as

against a vendor who had induced a sale through fraudulent misrepresentations. The courts properly held that it could constitute no defense to the seller to assert that the buyer could have discovered the falsity of his statements through an independent investigation. As between the parties, the buyer was clearly entitled to rely on the seller's representations, and the seller, who had intentionally made the statements in order to induce reliance, was properly estopped from asserting that the buyer should not have relied upon them.

Such a situation is clearly distinguishable from that presented in the instant case, where the question is not whether an innocent buyer may prevail over a fraudulent seller, but whether a prior purchaser may prevail as against a subsequent buyer who had reason to suspect that the property in question was not entirely free and unencumbered. Here, there can be no balancing of fraud as against mere negligence. The rule applicable to the facts presented by our situation is that the prior purchaser must prevail unless the subsequent purchaser can show that he bought in good faith and without notice, actual or constructive, of the prior sale. Since there is ample evidence to show that appellants had sufficient information to compel further inquiry on their parts, the trial court properly awarded specific performance in favor of the prior purchasers, respondents Chalmers.

Appellants next contend that specific performance should have been denied respondents Chalmers because their contract with the Raras did not provide for the payment of an adequate consideration for the property. Appellants maintain that the trial court erred in finding that the net sales price of $12,500 was an adequate consideration for the $3\frac{1}{2}$ acres at the time that the respondents contracted to buy it on December 18, 1958. Appellants point out that respondents agreed to pay only $4,000 per acre for the property, whereas appellants agreed to pay $5,500 per acre. Appellants also stress the fact that the Chalmers sought damages in lieu of specific performance and alleged that the value of the property was $25,000 at the time they learned of the breach of the contract on February 16, 1959. It is apparently appellants' position that the value of the property could not have doubled in two months time, and that it must thus have been worth substantially more than $12,500 when the Chalmers contracted to buy it on December 18, 1958.

Section 3391 of the Civil Code makes adequacy of consideration a prerequisite to the granting of specific performance.

(*Lamb* v. *California Water & Tel. Co.* (1942) 21 Cal.2d 33, 44 [129 P.2d 371].)     However, as pointed out in *Cushing* v. *Levi* (1931) 117 Cal.App. 94, 101 [3 P.2d 958]: " ' " 'Adequate consideration," as used in section 3391 . . . does not necessarily mean the highest price obtainable, but a price that is fair and reasonable under all the circumstances; it is always peculiarly a question of fact for the trial court to determine, in the light of all the facts and circumstances of each particular case.' " Although appellants rely on *Baran* v. *Goldberg* (1948) 86 Cal.App.2d 506 [194 P.2d 765], and *Wilson* v. *White* (1911) 161 Cal. 453 [119 P. 895], both of these cases are merely additional authority for the above quoted rule that the question of the adequacy of the consideration is normally one for the trial court.

        Our review of the record discloses testimony by qualified witnesses more than sufficient to support the finding that $12,500 was an adequate consideration for the property.

        Appellants' final contention is that the trial court erred in denying appellants damages on their cross-complaint. Appellants' argument is that error occurred in allowing them to recover only the amount they agreed to pay for the 3½ acres, and refusing to allow them a recovery of damages for a bad faith refusal to convey, in accordance with Civil Code, section 3306, which provides as follows: "The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; *but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land.*" (Emphasis added.)

        The decisions interpreting this section have held that a vendor is chargeable with bad faith where, without just cause or excuse, he refused to perform the contract, or where, through his own negligence, he has put it out of his power to perform. (*Engasser* v. *Jones* (1948) 88 Cal.App.2d 171, 177 [198 P.2d 546].)

        Appellants state that the trial court specifically found that the Raras' agent, Rosene, informed appellant Nick Danna that the "other parties" were no longer interested in the property and that the way was clear for appellants to purchase all 10 acres; that appellants, in purchasing the property, relied upon these representations; and that at the time of

making these representations, both Rosene and Baird knew that certain other parties had the right to buy the 3½ acres. The court held that appellants were entitled to no damages because they were possessed of sufficient information to place them under the duty of inquiring further into the interest of the "other parties," and limited appellants' recovery from the Raras to the amount, plus interest, that they had contracted to pay for the 3½ acres sold to the Chalmers.

We believe that the principles set forth in *Ashburn* v. *Miller, supra*; *Williams* v. *Graham, supra*; *Macco Construction Co.* v. *Fickert, supra*; and *Norris* v. *Hay, supra*, govern this phase of the case, and that the trial court erred in denying appellants damages solely on the ground that they could have discovered the falsity of Rosene's statements through inquiry.

In *Ashburn* v. *Miller, supra*, at page 81, it is said: " 'It is well settled that one who has acted in a manner which would reasonably induce another to forego or discontinue an investigation of his fraudulent acts will not be heard to say that the facts would have been developed had inquiry been made.' "

Had the trial court found that the Raras knowingly participated in Rosene's fraud, appellants should have been awarded damages for bad faith pursuant to Civil Code, section 3306. In awarding such damages, however, "bad faith" requires actual knowledge on the part of a vendor rather than knowledge imputed through agency. (*Snook* v. *Netherby* (1954) 124 Cal.App.2d 797, 801 [269 P.2d 195].)

A vendor's refusal to convey may not constitute bad faith where he was inexperienced in real estate transactions and was influenced by overreaching on the part of a real estate agent. (*Robertson* v. *Bogert* (1955) 130 Cal.App.2d 639 [279 P.2d 572].)

The trial court made no finding as to whether the Raras themselves acted in bad faith. An examination of the evidence reveals support for a conclusion either way. It is certainly clear that the Raras did sign a deed to their entire parcel after they had already signed a deposit agreement to convey 3½ acres of the same property to another party. On the other hand, Mr. Raras testified that he had only a first-grade education and had difficulty with the English language. He also testified that Rosene had told him that his contract with the Chalmers was no good.

In view of this conflict in the evidence and the absence of any finding as to whether the Raras were guilty of bad faith,

the judgment of the trial court cannot be upheld in its determination that appellants were entitled to no damages on their cross-complaint. The judgment awarding specific performance in favor of respondents Chalmers is amply supported by the evidence, and is affirmed. The judgment on the cross-complaint is reversed and remanded solely for a determination of whether or not appellants are entitled to damages on their cross-complaint, the remaining provisions of said judgment on cross-complaint to stand affirmed. Respondents Chalmers to recover costs on appeal, and appellants and cross-complainants to recover costs from cross-defendants and respondents Raras, Baird and Rosene.

Kaufman, P. J., and Agee, J., concurred.