[S. F. No. 22411. In Bank. Mar. 10, 1967.]

MARCELLA HARTE, Plaintiff and Appellant, v. UNITED BENEFIT LIFE INSURANCE CO., Defendant and Respondent.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Nino & Filice and William G. Filice for Plaintiff and Appellant.

Harold C. Nachtrieb, Allan, Miller, Groezinger, Keesling & Martin and Miller, Groezinger, Pettit, Evers & Martin for Defendant and Respondent.

MOSK, J.—Plaintiff, Marcella Harte, is the beneficiary of a policy of life insurance issued to her husband, Jacques H. Harte, by defendant United Benefit Life Insurance Co. (hereinafter United). Harte died in April 1962, and plaintiff brought this action after United refused to pay death benefits under the policy.

The application for the policy contains a clause to the effect that United would not be liable until a policy was delivered to and accepted by Harte while he was in good health, and United bases its defense on the claim that at the time the policy was delivered, Harte was suffering from inoperable cancer of the colon. In a trial before a jury the court granted United's motion for a nonsuit after plaintiff presented her evidence, and she appeals from the ensuing judgment.

This case, like *Metropolitan Life Ins. Co.* v. *Devore, ante,* p. 129 [56 Cal.Rptr. 881, 424 P.2d 321], involves construction of a "good health" provision in an application for insurance. Harte was 62 years old at the time he applied for insurance, and was employed as manager of a country club. He had a medical examination in March 1961 and was found to be in good health, although overweight. Beginning in April 1961 he began to experience difficulties with his stomach, evidenced by vomiting and diarrhea. His doctor performed various tests and diagnosed his condition as gastritis or colitis, due to nervous tension. He was told that the condition was not serious and that he should take sedatives and change his job.

On October 6 United's agent called on him for the purpose of selling him insurance and, after some discussion, the agent filled out an application form, which Harte signed. The following paragraph appears at the bottom of the form: "Do you hereby apply to the United Benefit Life Insurance Company for a policy to be issued solely and entirely in reliance upon the written answers to the foregoing questions, and do you agree that . . . *there shall be no liability hereunder until a policy shall be issued, and delivered to and accepted by you while in good health and free from injury, and the*

*first premium thereon actually paid in cash during your life-time. . . . ?''* (Italics added.) The word "yes" was written at the end of the paragraph, and Harte signed the form at the bottom. During the course of the conversation with the agent, Harte stated that he had been having some stomach trouble and that he was being treated for it, but that the condition was not serious. He paid a premium of $106.30 at this time and was given a receipt by the agent. After the premium was paid, the agent said, "Now, if anything should happen to you tomorrow, Mr. Harte, you are actually covered. . . . Of course, that depends on your physical with Dr. Wendt.''

On October 9 a doctor employed by United examined Harte. Thereafter his difficulties continued, and he began to have pains in his side. He went back to the hospital for more tests and, sometime during the last week of October, he was told that he had an obstruction of the bowel but that only minor surgery would be required to remove it. The examining doctor also said that a biopsy taken was negative, that there was nothing to worry about, that the obstruction would be removed and that he would "be all right.'' He entered the hospital on November 1, and the operation was performed on November 3. The next day when plaintiff visited the hospital she was told by the surgeon that her husband had an inoperable cancer, that it was the fastest-growing type of malignancy, and that he had only a few months to live. Harte was not informed of these facts.

The policy was delivered on November 11, 1961. At the time of delivery, the agent came to Harte's home and asked plaintiff if her husband was there. She answered in the negative. He did not ask where Harte was, and plaintiff did not volunteer the information that her husband was in the hospital. The agent said the premium had been increased by United because her husband was overweight, and he asked whether she would be willing to take the policy with the additional premium. She said she would, and he left the policy. Later in the day, when she asked Harte at the hospital whether she should pay the increased premium, he said he was too sick to decide and that he would leave it up to her. She paid the additional sum of $8.50 that evening and continued to pay the premiums until Harte died of cancer in April 1962.

Plaintiff rested her case after she testified to the foregoing facts, and United moved for a nonsuit on the ground that

the "good health" provision of the policy prevented any insurance from becoming effective because the uncontradicted evidence showed that plaintiff knew her husband was suffering from a fatal disease at the time the policy was delivered and that Harte knew he was in the hospital and had had an operation for a bowel obstruction. The trial court granted the motion for nonsuit, holding that Harte was not in good health when the policy was delivered, and that plaintiff was her husband's agent and knew at the time of delivery that he was suffering from a fatal disease.

As pointed out in *Metropolitan Life Ins. Co.* v. *Devore, supra,* the rule followed in this state is that a "good health" provision does not bar recovery under the policy where the applicant believes in good faith that his health has not materially changed between the time of application for the policy and its delivery, and that it is the insured's own knowledge of the state of his health which is decisive rather than the uncommunicated knowledge of a third person.

It is, of course, settled that a trial court must deny a motion for nonsuit if there is any substantial evidence which tends to establish the averments of the complaint and that on appeal from the granting of such a motion we must view the evidence in the light most favorable to the appellant, disregarding all inconsistencies and drawing only those reasonable inferences which are favorable to the appellant. (*Sunset Milling & Grain Co.* v. *Anderson* (1952) 39 Cal.2d 773, 779 [249 P.2d 24].)

When the evidence summarized above is analyzed in the light of these precepts, we conclude a jury could reasonably have determined Harte believed in good faith that there was no material change in his health between the time he applied for the policy and the date of its delivery. It is true that he had been admitted to the hospital for an operation to remove an obstruction of the bowel, but he had been assured by his doctor that the operation was only a minor one, that a biopsy taken was negative, that he had nothing to worry about, and that when the obstruction in his bowel was removed he would "be all right." He did not know prior to the time the policy was delivered that he had cancer and he could in good faith have believed that he was merely recovering from minor surgery and that his illness was but a temporary indisposition.

The fact that plaintiff was her husband's agent for the purpose of accepting the policy and that she knew he was

suffering from cancer does not alter this conclusion. The uncommunicated knowledge of an agent is not imputed to the principal for the purpose of determining whether he acted in good faith since the principal's good faith must be determined on the basis of facts of which he had actual knowledge. (*Snook* v. *Netherby* (1954) 124 Cal.App.2d 797, 801-802 [269 P.2d 195]; *Chalmers* v. *Raras* (1962) 200 Cal.App.2d 682, 690 [19 Cal.Rptr. 531]; cf. *Addison* v. *Huron Stevedoring Corp.* (1950) 96 F.Supp. 142, 158; *Estate of Fiddyment* (1946) 74 Cal.App.2d 72, 76-77 [168 P.2d 61]; see Rest.2d Agency, § 268, com. d; Seavey on Agency (1964) § 98, p. 181.)

 Moreover, this is not a case in which the evidence establishes that the agent was guilty of fraud to be charged to the principal. The evidence supports a conclusion that plaintiff acted without fraudulent intent in failing to tell the agent of her husband's illness when the policy was delivered. She was not asked for Harte's whereabouts and no inquiry was made about his health. Plaintiff had not read the application, and there is no indication that she knew of the existence of the "good health" clause. The agent's representation at the time Harte applied for the policy to the effect that his insurance coverage would begin as soon as United's physician approved Harte's health could reasonably have led her to believe that such approval was the only condition to the attachment of liability under the policy and that the discovery of her husband's illness after he received medical approval did not affect the validity of the policy.[1] That this was her understanding of the situation is reinforced by her testimony that she told the agent at the time the policy was delivered she would accept it with the increased premium because she felt "that we had better try to keep this policy." The jury could have concluded plaintiff did not believe her husband's illness was material and that she acted in good faith in accepting the policy without telling the agent of Harte's illness.

This conclusion also disposes of United's argument that plaintiff knew her husband's illness was material and had a duty to communicate her knowledge to the agent under

[1]The application provided that no statement made by agents of the company would be binding on it unless written into the application. However, plaintiff did not read the application, and the agent's comments may be examined for the purpose of determining whether plaintiff's failure to mention her husband's illness was fraudulent.

various provisions of the Insurance Code.[2] It should be noted in this connection that United did not raise the matter as a ground for its motion for nonsuit below. (See *Lawless* v. *Calaway* (1944) 24 Cal.2d 81, 94 [147 P.2d 604].)

The judgment is reversed.

Traynor, C. J., Peters, J., Tobriner, J., Burke, J., and Peek, J.,* concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice Draper in the opinion prepared by him for the Court of Appeal in *Harte* v. *United Benefit Life Ins. Co.* (Cal.App.) 51 Cal.Rptr. 518.

Respondent's petition for a rehearing was denied April 5, 1967.

---

[2]The sections upon which United relies are as follows: section 330 of the Insurance Code provides: ''Neglect to communicate that which a party knows, and ought to communicate, is concealment.'' Section 331 states: ''Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.'' Section 332 provides, ''Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining.''

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.