NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| WILLIAM BARICKMAN, ) | |
| ) | Supreme Court No. S-14084 |
| Petitioner, ) | |
| ) | Superior Court No. 3PA-08-02356 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT* |
| OF TRANSPORTATION & PUBLIC ) | |
| FACILITIES, and PUBLIC ) | No. 1407 – January 18, 2012 |
| EMPLOYEES LOCAL 71, AFL-CIO, ) | |
| ) | |
| Respondents. ) | |
| ) | |

Petition for Review from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Eric J. Brown, Law Office of Eric J. Brown, Anchorage, for Petitioner. Laura Fox, Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Respondent State, Department of Transportation & Public Facilities.

Before: Carpeneti, Chief Justice, Fabe, Winfree, Christen, and Stowers, Justices.

## I.    INTRODUCTION

William Barickman was an employee of the State Department of Transportation and Public Facilities (DOTPF) when he came under investigation for

---

\*    Entered pursuant to Appellate Rule 214.

allegedly stealing state property. He contends that he took only scrap material with permission. Nonetheless, following a predetermination hearing, DOTPF prepared a letter of termination and delivered it to Barickman. Barickman then signed papers and wrote a letter purporting to resign in order to avoid a "black mark on his record." Barickman then sued DOTPF for wrongful discharge. DOTPF moved for summary judgment claiming that (a) he could not claim wrongful discharge because he resigned in lieu of termination, (b) he failed to exhaust his administrative remedies, and (c) he failed to show a breach of the covenant of good faith and fair dealing. The superior court agreed with DOTPF, granting summary judgment on all three grounds. Barickman appeals.

Because the superior court granted summary judgment on three independent grounds, if we agree on any ground we must affirm summary judgment. Here DOTPF argues that even if Barickman can show that he was discharged and was excused from the exhaustion requirement, he has not shown that a material fact exists as to whether DOTPF breached its covenant of good faith and fair dealing. Barickman argues that DOTPF breached the covenant by: (1) terminating him in bad faith; (2) treating him differently than similarly situated employees; and (3) failing to conduct a reasonable investigation before firing him. But Barickman fails to present evidence supporting an inference that he was terminated for any reason other than DOTPF's good-faith belief that he had stolen new materials. Barickman fails to show that he was treated differently than other employees suspected of stealing new materials, and he fails to show that DOTPF failed to conduct a reasonable investigation. We therefore affirm the superior court's grant of summary judgment.

## II.  FACTS AND PROCEEDINGS

### A.    Background Facts[1]

From April 1995 until August 27, 2008, Petitioner William Barickman was employed by the Department of Transportation and Public Facilities (DOTPF) as an equipment operator and then foreman at the Cascade station.  The crew of the Cascade station is responsible for maintaining a stretch of the Glenn Highway north of Palmer.  While employed with DOTPF, Barickman received excellent performance evaluations.

In June 2008 the Division of Personnel learned that the Alaska State Troopers were investigating allegations of fuel theft from the Palmer DOTPF station.  Barickman's brother, who worked in the DOTPF Palmer station, was the initial subject of the investigation.  As part of the investigation, the troopers questioned Barickman about his brother.  Also as part of their investigation, on June 5, the troopers took aerial photographs of Barickman's property.  The photographs revealed fuel tanks on stands made of Telespar, a material that DOTPF uses for highway signposts.  Barickman had previously been given permission to salvage junk Telespar that DOTPF could no longer use.

The same day troopers questioned Barickman, Barickman had a conversation with his supervisor, Kurt Devon, about the investigation of his brother, and, according to Barickman, Devon told Barickman that if he had salvaged any state material, he should bring it back.  Either that evening or the next, Barickman removed the fuel stands from his property and, using a DOTPF loader, piled them into the DOTPF dump site at King River.

---

[1]      We apply all inferences in favor of Barickman, the non-moving party, in summarizing the facts in the record before the trial court. *McCormick v. City of Dillingham*, 16 P.3d 735, 738 (Alaska 2001).

Several days later, when the troopers asked Barickman about Telespar, he denied ever having had any on his property. A week later, after troopers told him about the photos they had taken, Barickman admitted to having had Telespar on his property. Barickman later explained that he had lied to the troopers because he "panicked" and was "scared for [his] job."

Following the troopers' investigation,[2] Dana Philips at the Division of Personnel scheduled a predetermination hearing for Barickman. Kurt Devon directed Barickman to attend the hearing, giving him written notice that Barickman was facing discipline for "allegedly [taking] state equipment and material for your personal use without permission." The notice also informed Barickman that this was his "opportunity to provide explanation or offer mitigating circumstances" and that "it is recommended that you have union representation at the meeting."

The meeting took place on June 29, 2008. Barickman and three state employees, including Dana Philips, attended. Dale Johnson, Business Representative from Barickman's union, Local 71, was assigned to represent Barickman at the hearing.[3]

Philips started the meeting by explaining why the meeting had been called and reiterating to Barickman that this was his opportunity to explain himself and rebut any allegations against him. She then proceeded to ask Barickman questions.

In the hearing, Barickman acknowledged having previously misled the troopers before admitting that he had Telespar. He maintained that he had made the fuel racks on his property eight years prior out of scrap Telespar that he had taken with the

---

[2] Barickman was indicted for theft and tampering with evidence, but the State ultimately dropped the theft charge and he was acquitted of the tampering charge.

[3] Barickman requested that his attorney be present at the hearing, but Johnson refused his request.

permission and encouragement of a former supervisor. He stated that this was a common practice in DOTPF.

When Philips asked Barickman why he disposed of his Telespar, he said that after he found out about the troopers' investigation, "I just — I panicked even though I had the okay to do it. I just — I got rid of everything that I had." Later in the hearing, Philips asked, "[I]f it was just scrap material, why did you get rid of [it]"? Barickman responded, "Because I came to believe that, I mean, I'm a bad guy too even though — excuse me — even though I had the okay, I just — I just panicked. I didn't want anything to do with anything." Philips noted that it appeared from trooper photos of the dump site that Barickman had buried the material, to which Barickman replied that someone else must have put more things on top of it. Philips further noted that the Telespar did not look damaged, to which Barickman replied that he had cut good three- or four-foot lengths out of damaged twelve-foot segments.[4] Although he repeatedly asserted that the material he had was all unusable scrap, at no point in the hearing did Barickman mention that Kurt Devon had told him to get rid of any Telespar he had.

Based on the hearing, Philips came to the conclusion that Barickman was lying about using only scrap Telespar and had in fact stolen good material. She subsequently consulted with DOTPF management, and prepared a letter of termination for DOTPF Maintenance and Operations chief Jack Fullerton's signature. That letter, dated August 27, 2008 and headed "Re: Dismissal of Employment," read in pertinent part:

> You claimed you have never taken state material without permission; however, your decision to dispose of the [T]elespar from your property leads the employer to logically conclude you knowingly intended to conceal this material. In addition, you further testified you understood the DOT/PF

---

[4]     Twelve feet of Telespar are needed to mount a sign.

policy and prohibition of utilizing state equipment for personal use; thus using the state loader further demonstrates you knowingly and willfully violated this policy to aid you in disposing this material.

Based on your testimony, the employer has concluded you have violated the department's policy regarding the Authorized Use of State Equipment (11.04.001) and the Executive Branch Ethics Act (AS 39.52.120) which outlines the prohibition of state employee's using state time, equipment, or facilities for personal benefit or financial interests. Your actions throughout this matter demonstrate extraordinar[il]y poor judgment. In addition, your behavior violates the department's Employee Conduct Policy (02.10.02) which considers theft and dishonesty egregious misconduct.

The violation of the aforementioned policies and the nature of your actions can not be tolerated and warrant severe disciplinary action. . . . As a result of your egregious misconduct, you are hereby dismissed from employment with the State of Alaska, Department of Transportation and Public Facilities. This action is effective immediately.

On August 27, 2008, Kurt Devon and union steward Harry Hensel delivered the letter to Barickman at the Cascade station. Devon informed Barickman that he had been fired. At his deposition, Barickman testified both that Devon gave him the letter and that he could not remember if Devon gave him the letter terminating him. Philips informed a representative of Barickman's union that the State would be open to the possibility of resignation in lieu of termination.

Shortly after receiving the notice, Barickman and Hensel called union representatives Robert Johnson, Dale Johnson, and Bill Meers and discussed the possibility of resignation in lieu of termination. Barickman's union informed him that he could fight his termination, but that it would be in his best interest to resign. Barickman was given three hours to make a decision. Understanding that his other alternative was

to be fired and hoping to avoid a "black mark on [his] record," he opted to resign. Barickman also told union representatives that his decision was based in part on resentment for how the State was treating him and the desire to spare his wife stress.

That afternoon, Barickman went to the Palmer station and handwrote a letter of resignation dated August 27, 2008. He also filled out an Employment Clearance Form, indicating that his separation from state employment was due to "resignation," rather than "termination," "dismissal," or any other cause. The following day, Barickman and the director of the Division of Personnel signed a Letter of Dispute Resolution saying that Barickman would resign in lieu of dismissal effective August 28, 2008. The letter stated: "The parties agree that the following constitutes a full and final resolution of all claims that have or may arise as a result of [Barickman's] employment with [DOTPF]."

Barickman later testified that he understood that he had been fired, rather than resigning, and that signing the resignation paperwork was merely to ensure that no "black mark" would appear on his record. Nevertheless, after leaving state employment, Barickman filled out a job application in which he wrote as his reason for leaving his DOTPF job that he had "resigned."

Barickman did not file a grievance with his union. The collective bargaining agreement between DOTPF and Barickman's union required that all disciplinary grievances be brought within ten days of discipline being entered.

### B.    Proceedings

On December 1, 2008, Barickman filed suit against both DOTPF and his union, alleging wrongful termination based on a breach of the covenant of good faith and fair dealing and defamation against DOTPF and negligence and a breach of duty of representation against the union. Both DOTPF and the union filed for summary

judgment.[5]  In its motion, DOTPF argued that summary judgment was appropriate on the wrongful termination claim because:  (1) Barickman resigned in lieu of termination; (2) even if he had been terminated, he had failed to exhaust his administrative remedies as outlined in the collective bargaining agreement; and (3) even if he was excused from exhaustion, Barickman did not present evidence showing that DOTPF had breached the covenant of good faith and fair dealing.  DOTPF also moved for summary judgment on the defamation claim arguing that Barickman had not made out a claim for defamation and that DOTPF was protected by sovereign immunity.

In his response, Barickman argued:  (1) that he could not have resigned from his job with DOTPF because he was terminated as soon as Devon informed him of DOTPF's decision and he thus could not resign from a job he no longer held; (2) that he was excused from the exhaustion requirement because the certainty of adverse action would have made a union grievance futile and because the grievance process would have been biased against him; and (3) that DOTPF had breached the covenant of good faith and fair dealing by treating him differently than other employees who had taken scrap Telespar, by terminating him in bad faith, and by performing an unreasonable investigation.  Barickman abandoned his claim of defamation by choosing not to defend it on summary judgment.

The superior court agreed with all of DOTPF's arguments and granted it summary judgment.  Barickman's motion for reconsideration was summarily denied.

While his claim against his union was proceeding to trial, Barickman petitioned this court for interlocutory review of the superior court's judgment dismissing his wrongful termination claim against DOTPF and for a stay of the trial against the union.  DOTPF did not oppose the motion, and we granted Barickman's petition.

---

[5]     The union's motion for summary judgment was granted as to negligence and denied as to fair representation.  It is not a subject of this petition.

## III.  STANDARD OF REVIEW

We review grants of summary judgment de novo.[6]  In reviewing a grant of summary judgment, we will "determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts."[7]  We construe the facts in the light most favorable to the non-moving party.[8]  But "[m]ere assertions of fact in pleadings and memoranda are insufficient for denial of a motion for summary judgment."[9]

## IV.  DISCUSSION

To prevail on a wrongful discharge claim, an employee must prove: "(1) that the employee was discharged by his or her employer and (2) that the employer breached a contract or committed a tort in connection with the employee's termination."[10]  In addition, "employees must first exhaust their contractual or administrative remedies, or show that they are excused from doing so, before they may pursue direct judicial actions against their employers."[11]  If an employee fails to establish that an issue of material fact exists as to either of these grounds, or that the exhaustion requirement has

---

[6]  *Yost v. State, Div. of Corps., Bus. & Prof'l Licensing*, 234 P.3d 1264, 1272 (Alaska 2010).

[7]  *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992).

[8]  *McCormick v. City of Dillingham*, 16 P.3d 735, 738 (Alaska 2001).

[9]  *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978) (internal citations omitted).

[10]  *Okpik v. City of Barrow*, 230 P.3d 672, 679 (Alaska 2010) (internal citations omitted).

[11]  *State v. Beard* (*Beard III*), 960 P.2d 1, 5 (Alaska 1998) (citing *Cameron v. Beard* (*Beard II*), 864 P.2d 538, 545 (Alaska 1993); *Voigt v. Snowden*, 923 P.2d 778, 781-83 (Alaska 1996)).

been met or excused, then summary judgment is appropriate. In this case, we focus on the second prong of the wrongful termination inquiry, because even if Barickman can show that a material issue of fact exists as to whether he was terminated and as to whether he was excused from exhausting his remedies against DOTPF, Barickman has not shown that an issue of material fact exists as to whether DOTPF breached "its duty of good faith and fair dealing.

> The covenant of good faith and fair dealing

> does not have a precise definition but generally requires employers to treat like employees alike and act in a manner that a reasonable person would regard as fair. The covenant has both a subjective and an objective component: the subjective component "prohibits an employer from terminating an employee for the purpose of depriving the employee of the contract's benefits," and the objective component "prohibits the employer from dealing with the employee in a manner that a reasonable person would regard as unfair."[12]

Barickman alleges that DOTPF violated the covenant, arguing that it terminated his employment in bad faith, that it treated him differently than similarly situated employees, and that it did not conduct a reasonable investigation before it decided to fire him. Barickman provides no admissible evidence to raise a genuine issue of material fact as to any of these contentions.

Barickman claims that he was dismissed for taking scrap Telespar, something he was permitted to do. He argues that there is "no evidence that DOTPF dismissed [him] because he stole *new* Telespar." (Emphasis in original.) But his dismissal letter makes clear that he was fired chiefly for taking "state material without

---

**12** *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 760-61 (Alaska 2008) (quoting *Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1012-13 (Alaska 1999)) (footnotes omitted).

permission." Because no one disputes that Barickman was permitted to take scrap Telespar, this can only mean that he was fired for taking new Telespar. Philips explained that based on Barickman's having lied to the troopers and his claim that he had dumped the fuel stands because he had panicked, she "believed it was most likely true that the stands were made out of stolen, unused Tel[e]spar rather than scrap."

Barickman also argues that he was wrongfully terminated for misconduct because "he was only following orders when he returned the scrap Telespar to the King River dump site." He argues that this was objectively unfair in violation of the covenant. DOTPF responds that it fired Barickman because of a good-faith belief that he had stolen new Telespar, and that despite being given an opportunity to explain himself to the troopers and at his predetermination hearing, he never told anyone that he had been ordered to dump the fuel stands. DOTPF argues that "[a]bsent evidence that [its] belief was not in good faith or that [its] investigation was objectively unreasonable, the mere fact that [DOTPF] may have been mistaken is immaterial." The superior court addressed this argument only briefly, noting that good faith meant "consistency with the agreed upon terms of the contract and honesty throughout the process," and that Barickman "could not point to any specific factual evidence of inconsistency with his employment contract or dishonesty."

We recognized in *Holland v. Union Oil Co. of California, Inc.* that "[i]f the employer makes a determination in good faith that the misconduct occurred, there is no breach of the implied covenant of good faith and fair dealing, even if the employee could subsequently prove that the factual finding of misconduct was a mistake."[13] Unless Barickman can provide some evidence showing that DOTPF made its determination that he had stolen new Telespar in bad faith, he can not survive summary judgment. DOTPF

---

[13] 993 P.2d 1026, 1035 (Alaska 1999) (quoting *Burton v. Sec. Pac. Nat'l Bank*, 197 Cal. App. 3d 972, 979 (Cal. App. 1988)).

emphasizes the fact that Barickman never told them that Devon had instructed him to return the fuel stands, despite being given ample opportunity in his predetermination hearing. Instead, when asked at the hearing why he had returned the material, Barickman explained, "I just panicked. I didn't want anything to do with anything." Further, at the time of Barickman's predetermination hearing, DOTPF knew that the Alaska State Troopers were preparing to charge Barickman with theft and evidence tampering. Finally, from the fact that the returned Telespar was buried at the dump site, DOTPF inferred that Barickman had intended to conceal it. In short, there appears to have been sufficient evidence from which DOTPF could have determined in good faith that Barickman was likely stealing new Telespar.

At oral argument, we asked Barickman's attorney what facts in the record showed that DOTPF did not have a reasonable belief that the Telespar Barickman had was improperly taken. Barickman's counsel responded that Devon had told him to return the material and that Barickman assumed that DOTPF would have known about the directive. Counsel also said that DOTPF was well aware that other employees were taking scrap material. But neither of these facts support an inference that DOTPF's conclusion that Barickman had stolen new material was made other than in good faith. Again, Barickman had a chance to tell DOTPF about Devon's directive but never did. Devon himself told Barickman that the predetermination hearing was his chance to explain himself.[14] As to what DOTPF knew about what other employees were taking, as

---

[14] Even if Devon's knowledge of his directive to return scrap material could be imputed to DOTPF as a general matter, "[t]he uncommunicated knowledge of an agent is not imputed to the principal for the purpose of determining whether he acted in good faith since the principal's good faith must be determined on the basis of facts of which he had actual knowledge." *Harte v. United Benefit Life Ins. Co.*, 424 P.2d 329, 332 (Cal. 1967) (construing RESTATEMENT (SECOND) OF AGENCY § 268, comment d (1950)); *see also Sisk v. McPartland*, 515 P.2d 179, 181 (Or. 1973) (concluding that knowledge of (continued...)

discussed more fully below, DOTPF's knowledge that others were taking scrap material has no bearing on Barickman, who was accused of taking new material. Barickman, then, presents no evidence suggesting that DOTPF reached its determination in bad faith. His claim therefore fails.

Barickman also alleges that DOTPF breached its covenant of good faith and fair dealing because it "treated [him] differently than other DOTPF employees who had salvaged or otherwise obtained DOTPF-owned material." In his deposition, Barickman discussed the widespread practice among DOTPF employees of taking scrap material. He points to a number of co-employees who were doing this but says that he was the only one punished for it. But as discussed above, Barickman was disciplined for taking *new* Telespar, not scraps. He presents no evidence that he was treated differently from other people who DOTPF had reason to believe were taking new material. Further, DOTPF provided a spreadsheet detailing that other employees accused of similar charges have been dismissed or asked to resign. Barickman does not challenge this evidence. He therefore fails to establish an issue of material fact that DOTPF treated him differently than similarly situated employees.

Barickman finally argues that DOTPF breached the covenant because it conducted an unreasonable investigation before disciplining him. He bases this argument "upon the disparate treatment evidence and the fact that DOTPF never bothered to inquire of Mr. Devon whether he directed those under him to return DOTPF-owned, but salvaged material." As already discussed, Barickman did not present evidence of disparate treatment. The only basis, then, for his claim that DOTPF's investigation was unreasonable is that it failed to uncover the actual reason he dumped his fuel stands.

---

**14**(...continued)
agent could not be imputed to principal for purpose of determining whether principal "wilfully" failed to appear).

Barickman relies on *Mitchell v. Teck Cominco Alaska Inc.*, in which we concluded that an issue of fact existed as to whether an employer had failed to conduct a reasonable investigation.[15] There the employer did not tell the employee what the charges were, nor give him an opportunity to explain himself.[16] But in this case, the superior court found that Barickman was given a full opportunity to tell his side of the story at his predetermination hearing. Barickman avers that DOTPF was unreasonable in failing to ask Devon, Barickman's supervisor, if he had told Barickman to return the scraps, but, again, Philips asked Barickman himself about the decision to return the Telespar, and Barickman never said anything about an instruction from Devon. Given Barickman's testimony, it was not unreasonable for DOTPF not to ask Devon about a directive that Barickman never mentioned Devon having given. As a matter of law, Barickman presents no evidence from which a reasonable juror could conclude that DOTPF conducted an unreasonable investigation.

## V.   CONCLUSION

For the reasons set forth above, we AFFIRM the superior court's grant of summary judgment on the ground that Barickman did not present evidence tending to show that DOTPF breached its covenant of good faith and fair dealing.

---

[15]   193 P.3d 751 (Alaska 2008).

[16]   *Id*. at 761.