## GILBERT v. GENERAL MOTORS CORPORATION.

### Civ. No. 320.

District Court, W. D. New York.

Sept. 23, 1941.

Complaint dismissed.

See, also, 32 F.Supp. 502.

Frank Keiper, of Rochester, N. Y. (Werner, Harris & Tew by Hugh J. O'Brien, all of Rochester, N. Y., and John D. Meyer, of Pittsburgh, Pa., of counsel), for plaintiff.

Frederic R. Twelvetrees, of Buffalo, N. Y. (Drury W. Cooper and Allan C. Bakewell, both of New York City, of counsel), for defendant.

BURKE, District Judge.

The basis of plaintiff's claim is that he submitted in confidence to the defendant a novel device consisting of an automobile starting switch and that the defendant in abuse of the confidence appropriated the underlying idea of his device in developing and manufacturing its own starter control which, he claims, is but a modified equivalent of his switch and embodying its fundamental idea. This switch, he claims, has been used on defendant's cars in large numbers and defendant has made large profits therefrom for which it should account.

Plaintiff's switch is a key-start device which uses the vacuum of the manifold by means of a cylinder and piston. The function of the vacuum is to pull apart the electrical contacts. It has a mechanical connection by means of a wire from the piston to the accelerator pedal. This connection either pulls the electrical contacts apart or holds them apart upon a drop in the manifold vacuum. The control switch is normally closed. Closing the ignition switch causes the starting motor to become operative. A spring inside the cylinder holds the control switch normally closed. The spring is overcome by vacuum to open the switch. It is opened by vacuum exerted on the piston and is prevented from closing by depressing the accelerator pedal.

Plaintiff relies on three separate submissions of his device to the defendants. The first was on September 10, 1931. Watkins, who was interested in selling the device to the defendant, drove a car equipped with Gilbert's vacuum controlled switch to one of defendant's subsidiaries, Delco Appliance, a manufacturer of household appliances located at Rochester, New York. He demonstrated the device to Findlay, one of the engineers in charge of new devices. Findlay has since died. Findlay rode in the car, operated it and examined the device by looking at it but did not take it apart. Apparently Findlay thought he was examining a patented device. So did Watkins. He asked Watkins for the patent number. Watkins did not have the patent number of Gilbert's earlier patented switch which was gravity controlled. He wrote Findlay several days later giving him the patent number and a sketch of the patented switch. Findlay replied several days later stating that his company was not interested. I reject the testimony of Watkins that Findlay made a sketch of the switch on the occasion of the demonstration at Rochester. Watkins did not see any sketch made by Findlay. He merely assumed that he made one. The second submission claimed by plaintiff was on the occasion of a visit of the plaintiff accompanied by one Henry to the Chevrolet plant at Detroit. There is no documentary proof of the claimed submission there. There is no definite proof of any one to whom the device was submitted. The third submission was occasioned by a letter written for plaintiff by one Frantz on December 26, 1931 to another of defendant's subsidiaries, Delco-Remy Corporation at Anderson, Indiana. The letter referred to the issued patent by number and referred to a pneumatic automotive starter without description. The letter was answered on December 29, 1931 by the chief engineer of Delco-Remy stating that his company would be interested in examining the starting motor and the patent. On December 31, 1931 Frantz again wrote inclosing a photostat of a later application for another patent relating to a starting motor and informing Delco-Remy that he was sending on one of the starters. It was received at the Delco-Remy plant, was examined and tested by its engineers sometime in 1932.

Previous to plaintiff's first claimed submission the defendant had begun development work on automatic starter control. Edwards, an engineer employed by the defendant, was engaged in such development work in 1930 at the Delco-Remy plant. In December 1930 he became familiar with a starting device which had been submitted to the defendant by Blake and Hill. This was a key-start device. Under his direction a combination vacuum and magnetic switch was built in January 1931 and was

installed on a car and tested. This switch utilized as an auxiliary control vacuum pressure derived from the intake manifold by means of a diaphragm. Another of the same general type was built in April, 1931 and was installed on a car and tested. Difficulties developed on these installations which resulted in a re-design of the control switch. Edwards was relieved of his duties in this experimental work in April or May, 1931. He was succeeded by Dyer who continued the development work of Edwards. Dyer made a drawing of a starter system not of the key-start type on September 10, 1931 in which manual operation of the accelerator pedal closed the starter circuit. This was the first idea sketched by Dyer of starter control through the accelerator. In this device when the engine commences to run the starter switch is made inoperative by generator voltage. It does not utilize vacuum control. On September 29, 1931, he made a drawing of an accelerator control vacuum switch. The accelerator pedal is used to close the starter circuit. It has a vacuum switch operated from a diaphragm which disables the switch holding contact lever. Vacuum does not open the switch but disables a clutch lever between the switch and the diaphragm so that the switch will then snap open of its own accord and remain open regardless of vacuum pressure. Dyer's next device was built and installed on a car on November 11, 1931 and on another car in January 1932. This was the first rotary type of switch operated with a vacuum. In this device also the accelerator pedal is used to close the starter circuit. The vacuum principle is the same as in the former device. In the latter a torque spring is used to open the switch. In the former a compression spring performs the same function. The switch in coming into contact has a rotary motion and slides upon two stationary contacts.

The commercial Buick starter switch operates in a rotary fashion by means of a vacuum in a diaphragm. The vacuum diaphragm de-clutches the operating arm and allows the torsion spring to rotate the movable contact out of engagement with the fixed contacts of the switch.

Gilbert's device with the improvements covered by his second application was an unpatented article not yet on the market. The sole purpose of exhibiting it to the defendant was to sell or lease it for consideration. Under the circumstances there was an implied agreement upon the part of the defendant not to use anything of novelty disclosed by the device for its own benefit. Hoeltke v. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, 923, certiorari denied, 298 U.S. 673, 56 S.Ct. 938, 80 L.Ed. 1395; Becher v. Contoure Laboratories, 279 U.S. 388, 390, 49 S.Ct. 356, 73 L.Ed. 752.

There is no evidence that Findlay ever communicated the result of his examination of Gilbert's device or any of its details to Dyer or that Dyer ever knew anything at all about Gilbert's device until after he had designed, built, and installed starter devices which were not key-start mechanisms but manually operated starter systems with vacuum operated disabling mechanism. Nor is there any evidence that, as a result of the plaintiff's claimed second submission of his device at the Chevrolet plant in Detroit, Dyer obtained any information or knowledge of Gilbert's structure. At the date of plaintiff's third submission of his device to the Delco-Remy division about December 31, 1931, Dyer had already designed, built and installed the manually operated systems with vacuum control above referred to.

Plaintiff argues that up to September 29, 1931, when Dyer made his first drawing of an accelerator control vacuum switch he had not seen any vacuum switch or the design of any vacuum switch which contained a connection to the accelerator rod to control the opening and closing of the circuit, unless it was Gilbert's. At that time he had seen Blake and Hill's vacuum device, he had already designed a starter control not of the key-start type in which manual operation of the accelerator pedal closes the starter circuit. He knew of Collins' device which was an accelerator controlled vacuum switch. To hold that Dyer knew of Gilbert's device at that time would be to indulge in sheer speculation. To hold that he attempted to copy the features of Gilbert's device would be to completely overlook the fact that his design and structure utilized vacuum and accelerator control in a substantially different manner than Gilbert. There is evidence of orderly and progressive development of the Buick switch whose structure and operation completely distinguishes it from Gilbert's.

Collins submitted to defendant in January 1931 an accelerator control vacuum switch of his own invention. A license on his invention was entered into with the de-

fendant on December 1, 1931. Collins had used this device on his car successfully in June, 1930. Collins, like Gilbert, employed a vacuum operated device of the piston type. The function however was different from Gilbert's. In the Collins device, unlike Gilbert's, the piston does not carry current and performs no service in making or breaking an electrical connection. The piston is, therefore, loosely fitted, unlike Gilbert's where it is part of an electric circuit. Vacuum does not open the Collins switch but disables the mechanical connection between the switch lever and the accelerator. This permits the switch to open by spring pressure. The switch is not held in open position by vacuum nor by depression of the accelerator. These features of Collins', present in the Buick switch, are not embodied in the Gilbert switch.

The evidence establishes that Kauffman had adopted means operated by the accelerator pedal to prevent closing of the control switch at low vacuum, one of the improvements on Gilbert's device shown in his second application, and had successfully used it as early as the summer of 1928, prior to any date proved by Gilbert for use and successful operation of his improved device. Kauffman's device embodying such means was submitted to the defendant before any submission by Gilbert of his switch.

The many important features of construction and operation of the Buick switch, present in the devices of Collins and Kauffman and not found in Gilbert's, demonstrate conclusively that Gilbert's switch was not copied nor were his ideas embodied in the Buick switch. Gilbert's switch is normally closed requiring only the turning of the ignition key to cause the starting motor to become operative. The accelerator pedal has no function in making the starting motor operative, its function being to pull the electrical contacts apart or to hold them apart upon a fall in vacuum. A spring holds the control switch normally closed. The spring is overcome by vacuum to open the switch. If the engine stalls when the accelerator is in a position where it does not hold the control switch open, there will be an automatic re-start which will recur on each stalling of the engine. The control switch is opened by vacuum exerted on a movable contact and held open by depressing the accelerator pedal. The Buick switch, like

Collins' and Kauffman's, is normally open and the closing of the ignition switch does not cause the starting motor to operate. The accelerator must be depressed to close the control switch. The accelerator does not hold the switch in open position. No spring holds the control switch closed. It is normally held open by a spring and must be closed by depressing the accelerator to overcome the force of the spring. If the engine stalls there is no automatic re-start and no re-start at all unless the accelerator pedal is again depressed. The switch is not opened by vacuum. The vacuum disconnects the member which operates the movable switch contact. The Buick switch has nothing in common with Gilbert's except the use of vacuum control and a mechanical connection to the accelerator pedal. The construction and function of each of these in the Buick switch is materially different from Gilbert's. Furthermore those features were common in several prior structures. Defendant obtained nothing from any of Gilbert's submissions of his device that aided it or that it used in its development of the commercial switch.

The complaint should be dismissed. Submit findings and conclusions on notice.