John E. DROEGER, Appellee,

v.

**WELSH SPORTING GOODS CORPORA-TION, a corporation, Appellant.**

No. 74–2517.

United States Court of Appeals,
Ninth Circuit.

June 8, 1976.

Rehearing and Rehearing En Banc
Denied Oct. 4, 1976.

Thomas Elke (argued), Sausalito, Cal., for appellant.

Jerome F. Downs (argued), Thornton, Taylor & Downs, San Francisco, Cal., for appellee.

Before DUNIWAY and GOODWIN, Circuit Judges, and LUCAS,* District Judge.

GOODWIN, Circuit Judge:

In this diversity action, Welsh Sporting Goods Corporation appeals the judgment entered after a jury found that Welsh had misappropriated a trade secret owned by John E. Droeger. We reverse.

In 1970, Droeger wrote an unsolicited letter to Welsh concerning Droeger's patented design for luggage convertible to a backpack. In early June, 1970, Welsh's sales representative, Warren M. Bayley, met with Droeger to discuss the patented device. At that same meeting, Droeger sketched for Bayley a second type of luggage that was also convertible to a backpack. This second concept, known as the "Russian design", was not original with Droeger.

Subsequent to the June meeting, Bayley wrote Droeger that "any and all descriptions, information, and naturally patents will be held in the strictest confidence." Thereafter, Droeger sent a letter to Bayley with two sketches. One sketch showed the Russian design plus an improved version of that design conceived by Droeger. The other sketch showed Droeger's "improved Russian design" could be applied to an existing Welsh product. In the accompanying letter, Droeger described his improvements, which included alteration of the carrying handle and the use of a stop to prevent the shoulder straps from being pulled through a staple.

Although Droeger and Bayley continued meeting to discuss Droeger's patent, Droeger received no answer from Bayley in response to questions concerning the "im-

* The Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

proved Russian design". When Welsh subsequently produced a pack similar to Droeger's "improved Russian design", Droeger instituted this action. The jury found that Droeger's concept was a trade secret and that Welsh had misappropriated it.

An officer of Welsh testified that he had conceived the challenged design with no knowledge of Droeger's idea. Bayley testified that he did not communicate Droeger's design idea within his company, but instead had filed it away. Both witnesses were uncontroverted by direct evidence. However, circumstantial evidence clearly created a question for the jury.

■ The principal point argued on appeal was the following instruction:

"Mr. Bayley, as agent, is under a duty to inform his employer as to all those matters which the employer would want to know about * * *. The corporation is presumed to know all that Mr. Bayley learns concerning the transaction, whether Mr. Bayley actually tells the corporation or not. *It is not a defense to the corporation that Mr. Bayley did not inform other officers * * *.*" (Emphasis added.)

The last quoted sentence is error, and, in this case, is of sufficient gravity to require another trial.

■ To be entitled to damages for the wrongful appropriation of his trade secret, a plaintiff must prove that the defendant has used the plaintiff's secret to the plaintiff's detriment. *Heyman v. AR. Winarick, Inc.*, 325 F.2d 584 (2d Cir. 1963). *See also Cal Francisco Inv. Corp. v. Vrionis*, 14 Cal. App.3d 318, 92 Cal.Rptr. 201 (1st Dist. 1971). As stated in *Futurecraft Corp. v. Clary Corp.*, 205 Cal.App.2d 279, 283, 23 Cal.Rptr. 198, 207 (2d Dist. 1962), "the ownership of a trade secret does not give the owner a monopoly in its use, but merely a proprietary right which equity protects against usurpation by unfair means." The law of trade secrets affords no protection against honest discovery. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476, 94 S.Ct. 1879,

40 L.Ed.2d 315 (1974). "The possibility of subsequent independent discovery is the prime risk that is implicit in reliance upon trade secret protection." 12 Business Organizations, R. Milgrim, Trade Secrets § 5.04[1], at 5:67 (1975).

When the court instructed in this case that "it was no defense" that Bayley did not inform other Welsh employees of Droeger's concept, the jury was no longer free to consider the corporation's defense of subsequent independent invention. Even if the jurors believed that an officer of Welsh had in fact invented the pack entirely upon his own initiative, the challenged instruction compelled them to find that the corporation "knew" of Droeger's concept through Bayley and therefore could not claim as its own the subsequent independent invention.

■■ Legal principles ought not to be applied in a mechanistic manner. It is true that under Cal.Civ.Code § 2332 (West 1954) a principal is chargeable with knowledge acquired by its agent while that agent was acting within the scope of his authority and in reference to a matter over which his authority extends. *See Desny v. Wilder,* 46 Cal.2d 715, 299 P.2d 257 (1956). The principal can even be held responsible for information not actually communicated by the agent when the failure to communicate was in breach of the agent's duty to convey information concerning transactions for which he is employed. W. Seavey, Law of Agency § 98 (1964). However, both the Restatement of Agency and the courts of California recognize an exception to these principles when the theory of liability requires actual knowledge on the part of the principal. Restatement (Second) of Agency § 275 (1958); *Harte v. United Benefit Life Insurance Co.,* 66 Cal.2d 148, 56 Cal.Rptr. 889, 424 P.2d 329 (1967); *Snook v. Netherby,* 124 Cal.App.2d 797, 269 P.2d 195 (1st Dist. 1954); *but cf. Davis v. Local No. 11, Int'l Bro. of Elec. Wkrs., AFL–CIO,* 16 Cal. App.3d 686, 94 Cal.Rptr. 562 (2d Dist. 1971).

■ In light of the emphasis in trade-secret law on unfair use, it is generally not

appropriate to direct a jury to impute an agent's knowledge of a secret to the principal.[1] Such an instruction would permit recovery even when the trade secret was not actually communicated to or used by the principal. The plaintiff is not entitled to a windfall when in fact there has been no invasion of those interests which trade-secret law seeks to protect.

■■■■■ If knowledge by the defendant were the only fact giving rise to liability, as, for example, whether a purchaser of property has knowledge of a lien, then the presumption of Cal.Civ.Code § 2332 (West 1954) might well require removal of that issue from the jury. *See, e. g., Hanlon v. Western Loan and Building Co.,* 46 Cal. App.2d 580, 116 P.2d 465 (1941). In a trade-secret case, however, it is the wrongful use of the secret that gives rise to the damage. As a number of cases[2] have pointed out, disclosure of the secret to the defendant, followed by manufacture of a closely similar device by the defendant, shifts to the defendant the burden of going forward with evidence to prove, if it can, that it arrived at the process by independent invention. There is substantial authority for the proposition that the defendant in such a case ought to offer more than the verbal testimony of interested witnesses. *Hoeltke v. C. M. Kemp Mfg. Co.,* 80 F.2d 912, 928 (4th Cir. 1935), *cert. denied,* 298 U.S. 673, 56 S.Ct. 938, 80 L.Ed. 1395 (1936). But it is one thing to instruct a jury along these lines and quite another to instruct the jury that "it is no defense" that Bayley did not pass along the information he admittedly received.

■■■ A proper instruction would have put the burden of persuasion on the corporation to satisfy the jury by the preponderance of the evidence that despite his duty to do so Bayley did not communicate Droeger's concept to other Welsh employees. But the jury would have been free to consider the defense of subsequent independent invention. It was error to take this part of the case away from the jury.

■■■ Because there must be another trial, we will comment briefly on the other points raised. We find no reversible error in the instructions on the effect of prior art. The trial court correctly pointed out the difference between the interests to be protected by patent law and those to be protected by trade-secret law.[3]

■■■ There was likewise no error in permitting the plaintiff to testify about his opinion of the value of his idea. *Clark v. Bunker,* 453 F.2d 1006 (9th Cir. 1972).

Reversed and remanded.

---

1. Nor should a judge in a trial to the court automatically impute to a corporate employer information communicated in confidence to an employee. Whether the agent conveyed such information to the corporation is a question for the fact-finder to decide. *See, e. g., Gilbert v. General Motors Corp.,* 41 F.Supp. 525 (W.D.N.Y.1941), *aff'd,* 133 F.2d 997 (2d Cir.), *cert. denied,* 319 U.S. 743, 63 S.Ct. 1031, 87 L.Ed. 1700 (1943).

2. *See, e. g., Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc.,* 365 F.2d 742, 749 (3d Cir. 1966), and cases cited therein.

3. The district court properly ignored language in *Sarkes Tarzian, Inc. v. Audio Devices, Inc.,* 166 F.Supp. 250 (S.D.Cal.1958), *aff'd,* 283 F.2d 695 (9th Cir. 1960), *cert. denied,* 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961), which suggested that anticipation of a concept in the prior art would necessarily preclude classification *as a trade secret. See* 12 Business Organizations, R. Milgrim, Trade Secrets § 2.08[3], at 2:58–2:59 n.18 (1975); and *Atlantic Wool Combing Co. v. Norfolk Mills, Inc.,* 357 F.2d 866 (1st Cir. 1966). We believe that the Milgrim treatise is a more accurate statement of the current state of the law of California than is Judge Yankwich's statement in the *Sarkes Tarzian* case.