**WHITTAKER CORPORATION and Dynasciences Corporation, Plaintiffs-Appellants,**

v.

**EXECUAIR CORPORATION, EMC Manufacturing Company, Inc., and Laurence S. Manhan, Defendants-Appellees.**

No. 81–5694.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 2, 1984.

Decided July 6, 1984.

---

[*] The Honorable C.A. Muecke, Chief Judge, United States District Court for the District of Arizona, sitting by designation.

[*] Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

Maureen McGuirl, Robert E. Cooper, Fred G. Bennett, Gibson, Dunn & Crutcher, Los Angeles, Cal., for plaintiffs-appellants.

Robert Yale Libott, Libott, Smitas & Associates, Los Angeles, Cal., for defendants-appellees.

Before KILKENNY, HUG and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Whittaker and its subsidiary, Dynasciences, (hereinafter referred to as Whittaker) brought this action alleging that Execuair and a related enterprise, EMC Manufacturing Co., (hereinafter referred to as Execuair) and Execuair's founder Larry Manhan misappropriated trade secrets, improperly "palmed off" Execuair's product as Whittaker's and infringed on Whittaker's trademark. Whittaker appeals and we affirm a partial summary judgment holding that Whittaker's claim for misappropriation of trade secrets was barred by the statute of limitations, and that recovery for pre-complaint acts of palming off was barred by laches and estoppel. We reverse a final judgment for Execuair granted by the district court on those claims not barred by the partial summary judgment and remand for further proceedings because of several incorrect pre-trial evidentiary rulings by the district court.

## FACTS

Whittaker manufactures and sells valves and their component parts for use in aircraft. Execuair rebuilds and sells Whittaker valves and sells replacement parts for Whittaker valves. Some of the replacement parts sold by Execuair are manufactured by Whittaker and some are manufactured by Execuair itself.

Whittaker filed suit against Execuair for damages and injunctive relief in August 1977. In October 1977, the district court issued a preliminary injunction that essentially required Execuair to clearly inform customers that any valves or parts of valves manufactured or rebuilt by Execuair were Execuair's product and not Whittaker's. Whittaker circulated a copy of the injunction with an accompanying letter to Execuair customers in December 1977. The district court then granted Execuair partial summary judgment, ruling that Whittaker's cause of action for misappropriation of trade secrets was barred by the applicable statute of limitations, laches and estoppel and that Whittaker was barred by laches and estoppel from recovery for acts

of palming off occurring prior to the filing of its complaint. Summary judgment on the trademark infringement claim was denied.

The court then made several pre-trial evidentiary rulings. The court denied Whittaker's motion seeking admission into evidence of documents obtained by Whittaker after the date specified for discovery cut-off. These documents were discovered by Whittaker in the course of an antitrust action filed by Execuair against Whittaker after commencement of the case at bar.

The court granted Execuair's motion to limit evidence of palming off to the period after August 29, 1977, when the complaint was filed, and prior to December 9, 1977, when the preliminary injunction and accompanying letter were circulated to Execuair customers by Whittaker. Whittaker then filed a written offer of proof listing witnesses and exhibits it would present at trial if allowed. In its final judgment order, the court held the evidence in the offer of proof inadmissible. The court granted final judgment for Execuair after Whittaker represented that it had no evidence to establish liability other than that rejected in its offer of proof.

## ANALYSIS

### A. THE SUMMARY JUDGMENT

In reviewing a grant of summary judgment, our task is identical to that of the trial court. *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 n. 1 (9th Cir. 1980). Viewing the evidence, de novo, in the light most favorable to the party against whom summary judgment was granted, we must determine whether the trial court correctly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. *Heiniger v. City of Phoenix,* 625 F.2d 842, 843 (9th Cir.1980).

### 1. *Misappropriation of Trade Secrets*

The parties do not dispute application of a two year California statute of limitations, Cal.Civ.Proc.Code § 339(1), to Whittaker's

claim for misappropriation of trade secrets. Their dispute is over when Whittaker's cause of action accrued for purposes of the statute.

The essence of Whittaker's claim is that Execuair wrongfully induced Whittaker suppliers to provide Execuair with drawings Whittaker had disclosed to its suppliers in confidence. We find no case squarely addressing the issue of when a cause of action for misappropriation by a third party (Execuair) of material communicated in confidence between two other parties (Whittaker and its suppliers) arises under California law. We find guidance, however, in the cases that address the issue of when a cause of action accrues in a two party context, where the defendant is the legitimate recipient of confidential information from the plaintiff but then wrongfully breaches the confidence.

In *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288 (9th Cir.1969), Monolith claimed that Kaiser misused information Monolith had communicated to Kaiser in confidence. This court, applying California law, held that a cause of action accrued at the moment Kaiser "first made adverse use *or* disclosure of the trade secret in violation of its confidential relationship." *Id.* at 292 (emphasis added). The court held that the cause of action was based on the protected relationship and that breach of the relationship gave rise to a cause of action, rejecting Monolith's assertion that each adverse use of the information created a new cause of action. *Id.* at 293.

In *Davies v. Krasna*, 14 Cal.3d 502, 121 Cal.Rptr. 705, 535 P.2d 1161 (1975) the plaintiff sued for "breach of confidence" when defendant, without plaintiff's consent, disclosed a story plaintiff had submitted to him in confidence. The California court indicated approval of this court's holding in *Monolith* that breach of confidence is not a continuing tort and that "'[t]he cause of action arises but once, and recovery for the wrong is barred within two years thereafter unless the statute has been effectively tolled.'" 14 Cal.3d at 509,

121 Cal.Rptr. at 710, 535 P.2d at 1166, (quoting *Monolith*, 407 F.2d at 293). The plaintiff's cause of action was deemed to run from the time of defendant's unauthorized disclosure of the confidential idea. 14 Cal.3d at 512, 121 Cal.Rptr. at 711, 535 P.2d at 1167. The California court explained that a cause of action does not arise until a plaintiff has suffered "appreciable and actual harm, however uncertain in amount," but that "neither uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations." 14 Cal.3d at 514, 121 Cal.Rptr. at 713, 535 P.2d at 1169. The *Davies* court found that appreciable harm had occurred, because disclosure of the story had damaged its marketability. *Id.*

■ We hold that Whittaker's misappropriation claims in the instant case accrued when Whittaker became aware that Execuair acquired the drawings alleged to be trade secrets. We see no reason for accrual purposes to distinguish between wrongful acquisition of a trade secret by a third party who does not stand in a confidential relationship to the plaintiff and wrongful disclosure in a two party situation, such as in *Monolith*, where the defendant does have a confidential relationship with plaintiff.

■ Although this is a close case, we hold that the *Davies* "appreciable harm" standard was satisfied at the time Execuair acquired the drawings. The drawings obviously had value because they could be used by Execuair to obtain crucial Federal Aviation Administration approval for use of the parts. Moreover, someone had to be paid for the original preparation of the drawings. In the absence of some showing of change in value, they would at least be worth the cost of preparation. While the value of the drawings may have been uncertain, under California law neither uncertainty as to amount of damages nor difficulty in proving damages delays accrual. *See Davies*, 14 Cal.3d at 514, 121 Cal.Rptr. at 713, 535 P.2d at 1169.

Whittaker cites *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790 (9th Cir.

1976), another case construing California law, for the proposition that a new cause of action arose each time Execuair used an improperly acquired drawing. *Droeger* did not, however, involve a statute of limitations issue, and the decision must be read in the context of its facts. The claim in *Droeger* was that the defendant corporation misappropriated a design which had been communicated to the corporation's agent in confidence. The corporation contended that it had independently developed and put into use a similar design. The case primarily dealt with the issue of when an agent's knowledge is chargeable to the principal, and no allegation of wrongful acquisition of the design or wrongful disclosure of the design to third persons was involved. *Id.* at 791–92. The corporation appealed an instruction which allowed the jury to find wrongful misappropriation if the jury found that the corporation's agent had knowledge of the secret design, regardless of whether the agent had ever communicated the design to other corporate employees or whether the corporation had developed the similar design entirely independently. *Id.* The court in this context held that it was wrongful use, if any, which gave rise to plaintiff's claim and that mere knowledge by the corporation's agent of the secret design was not a basis for recovery. *Id.* at 792–93.

■ The *Droeger* court in no way intimated that it was casting doubt on the holding in *Monolith* that either wrongful disclosure or wrongful use of material communicated in confidence triggers accrual of a cause of action. *See Monolith*, 407 F.2d at 292. Thus, *Droeger* does not preclude our holding that wrongful acquisition of a trade secret can result in maturation of a claim even without use. This is not to say that a cause of action will accrue in every case upon wrongful acquisition. As explained in *Davies*, there must be actual and appreciable harm, not mere nominal damages, for a cause of action to accrue. *Davies*, 14 Cal.3d at 514, 121 Cal.Rptr. at 713, 535 P.2d at 1169. Each case must be examined on its facts for existence or nonexistence of the requisite harm.

■ The record supports the district court's finding that Execuair acquired the drawings at issue more than two years before Whittaker filed its complaint in August 1977. A declaration by Manhan asserts that the drawings were acquired in the 1950's, 60's and early 70's. Whittaker was aware as early as 1971 that Execuair possessed allegedly secret drawings. Whittaker fails to raise a material issue of fact as to the dates.

Because we uphold the statute of limitations bar, we need not review the district court's alternative holding that the claim for misappropriation of trade secrets was barred by laches and estoppel.

### 2. *The Palming Off Claim*

■ The district court held Whittaker barred by laches and estoppel from recovering for pre-complaint acts of palming off, because Whittaker knew that Execuair was engaging in the allegedly improper conduct as early as June 1972 but delayed filing suit until 1977. Whittaker for the first time on appeal argues that Execuair had unclean hands, and that, in any event, the doctrines of laches and estoppel should not apply in a damages action. Legal arguments normally may not be raised for the first time on appeal, although this court has discretion to reach an issue if it would not cause the parties to develop new facts. *Commodity Futures Trading Comm'n v. Co Petro Marketing Group, Inc.*, 680 F.2d 573, 581 (9th Cir.1982) (new issue considered on appeal, because it was purely one of statutory construction central to the case and important to the public); *see United States v. Dann*, 706 F.2d 919, 925 n. 5 (9th Cir.1983).

■ Unclean hands is partially a factual determination. We decline to reach the issue because Execuair might have developed the facts differently if unclean hands was raised below. We also decline to exercise our discretion to decide the issue of whether laches or estoppel applies to damages actions under California law, as we

find no sufficiently compelling reason to decide Whittaker's contention at this juncture in derogation of the normal rule that arguments should be raised first at trial.

 Whittaker contends that Execuair failed to show sufficient detrimental reliance for a claim of laches or estoppel. The district court found sufficient reliance in that Execuair continued its existing business practices, made capital investments to expand its business, acquired additional drawings and destroyed records of when drawings and parts were obtained by virtue of Whittaker's failure promptly to challenge Execuair's practices. Whittaker focuses only on the capital investment aspect of this reliance: the purchase of real estate, and the purchase of Whittaker parts and equipment for reconditioning the parts. There may be merit to Whittaker's contention that Execuair has failed to demonstrate prejudice by virtue of its real estate investments. The purchase of parts inventories and equipment or tooling, however, does tend to establish detrimental reliance, as these purchases were made to enable Execuair to expand its existing parts trade, a trade practiced in a manner Whittaker now claims constituted improper palming off. Moreover, Execuair was prejudiced because it continued engaging in its existing practices, incurring additional potential liability by reason of Whittaker's failure to take prompt action.

## B. THE EVIDENTIARY RULINGS

Whittaker appeals several pre-trial evidentiary rulings by the district court. The court excluded evidence of "palming off activity" that occurred prior to August 29, 1977, when the complaint was filed, and after December 9, 1977, when the letter and preliminary injunction were sent to Execuair customers. The court excluded as evidence of liability documents discovered in a separate antitrust action between the parties, after the discovery cutoff date in the case at bar. The court also excluded the evidence itemized in a written offer of proof filed by Whittaker, finding that it either fell outside the time period for which

evidence was admissible, or was discovered in the parties' antitrust action after the discovery cutoff date in the instant case.

 Excluding evidence discovered in the antitrust action after the discovery cutoff date in the case at bar was improper. District courts do have power to prescribe time limits for conducting discovery. *See* Fed.R.Civ.P. 26. The purpose of a discovery cutoff date is to protect the parties from a continuing burden of producing evidence and to assure them adequate time to prepare immediately before trial. *See King v. Georgia Power Co.*, 50 F.R.D. 134, 135–36 (N.D.Ga.1970), *aff'd in part and vacated in part on other grounds, sub nom. United States v. Georgia Power Co.*, 474 F.2d 906 (5th Cir.1973), *vacated and remanded on other grounds, sub nom. Local Union 84, IBEW v. United States*, 456 U.S. 952, 102 S.Ct. 2026, 72 L.Ed.2d 477 (1982). A discovery cutoff date does not, however, affect admissibility of evidence obtained outside of the discovery process of the case in which the cutoff date is ordered. If Execuair believed that Whittaker's conduct regarding discovery in the antitrust action was in any way improper, Execuair should have sought a protective order in the antitrust case. *See* Fed.R.Civ.P. 26(c).

 We further hold that Judge Marshall erred by excluding evidence of pre-complaint acts of palming off. Evidence of events or transactions which cannot be the subject of a suit by virtue of a statute of limitations bar may be introduced to show the nature and character of transactions under scrutiny or to establish a course of conduct. *International Assoc. of Machinists Local 1424 v. NLRB*, 362 U.S. 411, 416–17, 80 S.Ct. 822, 826–27, 4 L.Ed.2d 832 (1960); *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1305 (9th Cir.1983); *see Fed. Trade Comm'n v. Cement Institute*, 333 U.S. 683, 704–05, 68 S.Ct. 793, 805, 92 L.Ed. 1010 (1948); *Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d 1295, 1300–01 (9th Cir.1981). Moreover, when it denied admission of pre-complaint evidence in

the offer of proof, the court prevented Whittaker from showing that Execuair was the manufacturer of parts allegedly palmed off as Whittaker's after filing of the complaint.

The judge further erred by excluding evidence of palming off after December 9, 1977. It may well be that circulation of the letter and preliminary injunction to Execuair's customers made palming off after this date a practical impossibility. Whittaker, however, should have been allowed to address this issue by submitting evidence which purportedly showed that successful palming off did in fact occur.

Finally, it was error for the judge to preclude Whittaker from presenting evidence enumerated in the offer of proof which was relevant to Whittaker's trademark infringement claim, a claim on which summary judgment had been denied and which was fully open for exploration at trial.

Because of these improper evidentiary rulings, we reverse and remand for trial on those claims not foreclosed by the summary judgment.

REVERSED and REMANDED.