952 F.2d 408
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
WHITTAKER CORPORATION and Whittaker Controls, Inc.,
Plaintiffs-Appellees
v.
EXECUAIR CORPORATION, et al, Defendants-Appellants
 No. 91-55097.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 10, 1991.
Decided Dec. 17, 1991.
 
 Before JAMES R. BROWNING, ALARCON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Execuair Corporation and Execuair Sales Corporation, (Execuair) and Laurence S. Manhan and David Manhan (the Manhans) appeal from the district court's finding that they violated the injunction entered on June 9, 1987 (June, 1987 Order) by offering to sell blueprints for Whittaker aircraft parts. The district court held the defendants in contempt of the June, 1987 Order and awarded the remedies requested by Whittaker.
 
 
 3
 We affirm because we conclude that (1) the record supports the district court's order finding that Execuair violated the injunction by attempting to sell the blueprints for Whittaker parts, (2) the injunction was not unconstitutionally vague, (3) the offer to sell the blueprints violated the injunction, (4) the conditional fine was a proper contempt sanction, and (5) appellants have no standing to challenge the application of the court's November 26, 1990, order to persons who are not parties to this action.
 
 I.
 
 4
 Execuair's principal contention is that the district court erred in finding that Execuair had violated the injunction by offering to sell its blueprints for Whittaker parts. The decision to hold a party in contempt and the imposition of sanctions for contempt are reviewed for abuse of discretion. Transgo, Inc. v. Ajac Transmissions Parts Corp., 768 F.2d 1001, 1023 (9th Cir.1985), cert. denied, 474 U.S. 1059 (1986).
 
 
 5
 Execuair argues that since the blueprints were awarded to it in a prior lawsuit ( Whittaker Corp. v. Execuair Corp., 736 F.2d 1341 (9th Cir.1984)), Whittaker is barred by res judicata from asserting any rights to them now. This contention is devoid of merit. Following our 1984 decision, Execuair agreed to a modification of its right to the blueprints in order to settle its disputes with Whittaker. Our task is to determine Execuair's obligations under the injunction issued on June 9, 1987, as a result of the settlement agreement.
 
 
 6
 The district court found Execuair in contempt because it used Whittaker part numbers in violation of the June, 1987 Order. The June, 1987 Order provides that:
 
 
 7
 The Execuair companies and/or the Manhans shall not use any Whittaker part number, adopted now, or in the past or the future, except in lists, or other publications or documents, that cross-reference Whittaker part numbers with Execuair or EPN part numbers; provided, however, that such publications or documents shall clearly state that the Execuair or EPN part numbers do not designate parts made by or for Whittaker.
 
 
 8
 Execuair asserts that the June, 1987 Order does not clearly prohibit the sale of the blueprints. We disagree. The June, 1987 Order expressly prohibits any use of Whittaker part numbers except in cross references. The blueprints contained Whittaker's name and part numbers.
 
 
 9
 The district court considered extrinsic evidence to determine whether the parties intended to permit Execuair to use Whittaker's part numbers on any document other than lists that cross-reference Whittaker part numbers with Execuair part numbers. Laurence Manhan, Execuair's sole shareholder and former president, testified that it was his understanding that the June, 1987 Order did not prohibit the sale of blueprints awarded to Execuair as a result of the 1984 court action. The president of Whittaker testified that the only exception to the restriction barring the use of Whittaker part numbers in the June, 1987 Order was the use of the part numbers in cross-reference lists. He stated:
 
 
 10
 "We talked quite a bit about trying to anticipate how [Execuair] would find a loophole or crack in [the June, 1987 Order] someplace and violate it ... we were not as ingenious as Execuair in this particular area. They always seemed to find a way ... rather than try to list specifics, we wrote the kind of language to make it just as broad as we possibly could so that [Execuair] could not use the part numbers in any way.
 
 
 11
 The district court entered the following finding:
 
 
 12
 17. In deciding whether to accept language in the written settlements and resultant court order, Whittaker was influenced by the past misconduct of the Execuair Companies and the Manhans in distorting and evading the plain meaning of words. Whittaker decided it would agree to a settlement only if the settlement agreement was incorporated into a court order and contained language, restricting the defendants from using Whittaker part numbers, that was broad enough to prevent the defendants from avoiding living up to their bargain.
 
 
 13
 We may not set aside a district court's finding of facts unless they are clearly erroneous. Fed.R.Civ.P. 52(a). In addition, due regard must be given to the trial court's opportunity to judge the credibility of witnesses. Id. "In cases of conflicting testimony where credibility is necessarily at issue, we must be 'especially reluctant' to set aside the findings of the trial court." Gibbs v. Pierce County Law Enforcement Support Agency, 785 F.2d 1396, 1402 (9th Cir.1986) (citations omitted).
 
 
 14
 The record supports the district court's determination that Laurence Manhan's unilateral interpretation of the settlement discussions did not reflect the expressed intention of the parties to preclude the use of Whittaker's part numbers by Execuair except in cross reference listings. The court's findings of fact were not clearly erroneous. The plain language of the June, 1987 Order precluded the sale of the blueprints.
 
 II.
 
 15
 Execuair argues that the June, 1987 Order is unconstitutionally vague because it did not give Execuair adequate notice of its legal responsibilities. "The void-for-vagueness doctrine reflects the principle that a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Roberts v. United States Jaycees, 468 U.S. 609, 629 (1984) (citations omitted). A district court's determination of a constitutional question is reviewed de novo. Wood v. Sunn, 865 F.2d 982, 986 (9th Cir.1988), vacated 880 F.2d 1011 (1989).
 
 
 16
 The cases cited by Execuair do not support its contention. For example, in Giaccio v. Pennsylvania, 382 U.S. 399, 404 (1966), the Court found that the statutory terms "misconduct" and "reprehensible conduct" were too "loose and unlimiting" to withstand a void-for-vagueness challenge as they did not adequately define what conduct was attempting to be prohibited. Likewise, in Small Co. v. American Sugar Refining Co., 267 U.S. 233 (1925), the Supreme Court held that an order which "forbids no specific or definite act" cannot be valid. Id. at 239 (quoting United States v. Cohen Grocery Co., 255 U.S. 81, 89 (1921)).
 
 
 17
 The June, 1987 Order could hardly be more specific. It bars Execuair and the Manhans from using any Whittaker part number except in cross-reference lists. It further bars Execuair from using Whittaker's name, trademarks, or parts numbers in any way that might lead the public or customers to believe they were associated with Whittaker. Execuair does not contest that the blueprints contain Whittaker part numbers. By offering to sell blueprints containing Whittaker part numbers, Execuair violated the June, 1987 Order prohibiting the use of the part numbers in anything but cross-reference lists. Because the June, 1987 Order is not vague or indefinite, the district court did not err in finding Execuair in contempt.
 
 III.
 
 18
 Execuair alleges that the district court could not find them in contempt under the June, 1987 Order when only an offer, and not a sale, had been made. We disagree. The June, 1987 Order bars Execuair from using any Whittaker part number. Making an offer to sell blueprints which have Whittaker parts numbers on them is clearly a "use" of such numbers.
 
 
 19
 Furthermore, the district court has the power to issue an injunction to prevent future harm. As stated by the Supreme court in Swift & Co. v. United States, 276 U.S. 311, 326 (1928), "a suit for an injunction deals primarily, not with past violations, but with threatened future ones; and that an injunction may issue to prevent future wrong, although no right has yet been violated." Further, the propriety of prospective injunctive relief is well-established where trademark infringement or unfair competition is threatened or imminent. 1A Gilson, Trademark Protection and Practice, § 8.07 at 8-155 to 8-156 (1991). "The trademark owner need not wait to be injured or for actual confusion to occur, but is regarded favorably if he acts promptly in pursuing his rights." Id. at 8-156.
 
 
 20
 The district court did not err in holding Execuair in contempt for offering to sell the blueprints for Whittaker parts.
 
 IV.
 
 21
 Execuair contends that the conditional $10,000 daily fine is improper because it bears no relationship to the character and magnitude of the harm threatened. This argument lacks merit. The fine is an appropriate coercive sanction because it is to be imposed only if the defendants do not immediately comply with the court's contempt sanctions. See In re Magwood, 785 F.2d 1077, 1082 (D.C.Cir.1986) (Coercive civil fine is proper only where it compels future compliance by the contemnor.).
 
 
 22
 Contrary to Execuair's assertions, the fine is not punitive. Unlike the punitive fine at issue in Falstaff Brewing Corp. v. Miller Brewing Corp, 702 F.2d 770 (9th Cir.1983), Execuair can avoid paying the fine by complying with the court's order. In Falstaff, the fine was imposed to punish Falstaff for past acts of disobedience. Id. at 779. Since Falstaff could not alter the past acts of disobedience, the district court's sanction was found to be punitive rather than coercive. Id. By contrast, the fine in this case is conditioned on Execuair's future compliance.
 
 
 23
 Execuair also contends that the fine is improper because the district court failed to consider the factors set forth in United States v. United Mine Workers of America, 330 U.S. 258, 304 (1947). Generally, the court has wide discretion in determining coercive civil sanctions. Perfect Fit Industries, Inc. v. Acme Quilting Co., 673 F.2d 53, 57 (2nd Cir.), cert. denied, 459 U.S. 832 (1982); G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 41 (1st Cir.1980). However, United Mine Workers requires the court to consider the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." United Mine Workers, 330 U.S. at 304. See also General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir.1986) (on remand, the court must consider United Mine Workers factors in awarding a coercive fine); Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir.1983) (court must consider United Mine Workers factors before imposing coercive fine).
 
 
 24
 The record shows that the district court considered the United Mine Workers factors in fashioning the sanctions. The court specifically stated in its November 26, 1990 contempt order that it had considered "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." The court also stated that the harm threatened by a failure to comply with the restrictions on the use of Whittaker parts numbers is irreparable. These statements demonstrate that the district court considered and applied the United Mine Workers factors.
 
 V.
 
 25
 Execuair also asserts that the remedies ordered by the court after the contempt finding are invalid because they were directed to persons and entities who did not appear before the court. The trial court made the terms of the November 26, 1990 order applicable to:
 
 
 26
 ... (1) the defendants' present, former and future employees, officers, directors, shareholders, agents, partners, and representatives, (2) their former, present and future successors, assigns, parent entity or entities, subsidiaries, divisions and affiliates, (3) their present and future immediate family members (spouses, children, parents and siblings), (4) any firm or entity in which the individuals or their family members now or may in the future have any interest or from which they now or may in the future derive any benefit, and (5) those persons, firms or entities in active concert or participation with each or any of the aforementioned persons, firms or entities.
 
 
 27
 The district court stated that including persons in its order who were not parties was necessary "[g]iven the propensity of the defendants for establishing new companies and enlisting the aid of others to thwart court orders."
 
 
 28
 Execuair and the Manhans have not demonstrated that they have standing to assert the right of third persons who are not parties to this action. Article III of the Constitution limits federal courts to the adjudication of actual "cases" and "controversies." In order to show standing, the party must show a "distinct" and "palpable" injury that is neither "abstract" or "hypothetical." Allen v. Wright, 468 U.S. 737, 750 (1984). A litigant is prohibited from "raising another person's legal rights." Id. at 751. Execuair and the Manhans have not demonstrated that they have suffered any injury because of the breadth of the contempt order.[1]
 
 AFFIRMED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Execuair addresses the propriety of the relief ordered in two other contempt orders which are presently on appeal before this court. For example, rather than explaining what portions of the order Execuair objected to as punitive, Execuair merely states that "[t]he punitive nature of the Orders is obvious in the scope of the Orders." Execuair also objects that the contempt sanctions permanently prohibit Execuair from engaging in the airline parts business. In fact, while the other two contempt orders do provide this sanction and are being challenged in different appeals, the November 26, 1990 order does not bar the Manhans from the airline parts business. We have limited our review to the issues raised by Execuair which concern the November 26, 1990 contempt order